COMMONWEALTH vs. THEODORE J. TRIGONES.

Middlesex. March 3, 1986. — May 22, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Cross-examination, Previous testimony of unavailable witness, Blood sample, Admissions and confessions. *Constitutional Law,* Confrontation of witnesses, Cross-examination, Probable cause, Admissions and confessions. *Search and Seizure,* Blood sample, Affidavit. *Probable Cause. Witness,* Unavailability. *Practice, Criminal,* Argument by prosecutor. *Homicide.*

Where the defendant in a murder case had an opportunity to cross-examine a certain witness at a pretrial suppression hearing and should have had the same motive for doing so as he would have had at trial, and where any failure of defense counsel adequately to pursue the opportunity for cross-examination as to bias in favor of the Commonwealth was without demonstrated practical significance, a transcript of the witness's testimony, which referred to inculpatory statements by the defendant, bore sufficient indicia of reliability to satisfy the requirements of the confrontation clause of the Sixth Amendment to the United States Constitution and thus was properly admitted at the defendant's trial after the witness asserted his privilege against self-incrimination and was declared unavailable to testify. [635-640]

A judge's postindictment order that the defendant in a murder case submit a blood sample for analysis was based upon a constitutionally sufficient determination of probable cause, warranted by uncontroverted statements of fact by the prosecutor in an affidavit and, later, in open court at an adversary hearing. [640-641]

A police officer's failure to strike inapplicable words from the printed form on which he applied for a warrant to search a motor vehicle did not render the warrant invalid. [641-642]

The judge at a criminal trial acted within his discretion in giving curative instructions to the jury and in denying the defendant's motion for a mistrial after the prosecutor, in his opening statement, acted improperly by expressing his personal opinion as to the credibility of a prospective key witness.[642]

A criminal defendant's constitutional privilege against self-incrimination and right to counsel did not entitle him to the suppression of his unsolicited statement to a police officer who was guarding him in a hospital, or of his inculpatory statements to third persons who were not acting for the government. [643]

INDICTMENT found and returned in the Superior Court Department on July 19, 1983.

Pretrial motions to suppress evidence were heard by *Elbert Tuttle, J.,* and the case was tried before him.

*John H. Cunha, Jr.,* for the defendant.

*Fredric Lee Ellis,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant's appeal from his conviction of murder in the first degree presents various claims of error, all but one of which concern the admission of evidence that was the subject of pretrial motions. There was no error, and the defendant is entitled to no relief under G. L. c. 278, § 33E (1984 ed.). We affirm the conviction.

The jury could have found the following facts which establish the context of the issues in this appeal. The victim, a thirteen year old babysitter, died of multiple stab wounds on July 1, 1983, in the living room of a residence in Lowell where she had been taking care of two young children. Her body was found that day lying face down on the floor between a couch and a coffee table. The father, Leo Trzcinski, Jr., did not then live in the residence where the victim was killed. He had separated from his wife a few weeks earlier and was living with his sister and the defendant elsewhere in Lowell.

The jury heard evidence of the separate wanderings of the defendant and Trzcinski during the evening before the killing. The defendant spent much of that night looking for Trzcinski. Sometime after 1:30 A.M. on July 1, the defendant arrived at his mother's house in Lowell. He was wearing no shirt. His pants and sandals were stained. The palm of one hand was cut and bleeding. About 5:30 A.M., the defendant, his brother, and their stepfather, Roland Weed, left the house to hide the defendant's motor vehicle. During that trip, while his brother was inside a coffee shop, the defendant made incriminating statements to Weed. Later that morning Weed drove the defendant to a Lowell hospital for treatment of apparent drug overdose.

About 4:30 A.M. on July 1, Trzcinski entered the residence where his wife and children lived. He had tried unsuccessfully to reach the house by telephone and had driven there looking

for his wife. The baby sitter appeared to be asleep on the floor in front of the couch. Trzcinski found his two children asleep upstairs in one bed. His wife was not home. He made coffee, used the telephone in an effort to find his wife, and then sat in the living room to await her return. As dawn advanced and the room became lighter, Trzcinski noticed blood on the victim's hand and realized that the couch was stained with blood. He concluded that the babysitter was not asleep and summoned assistance.

The defendant accused Trzcinski of stabbing the victim. He testified that he went to the Trzcinski residence that night and saw Trzcinski sitting near the dead girl. As he tried to take a knife away from Trzcinski, the defendant was cut on the palm. There was evidence that Trzcinski was jealous of his wife, that he took their bed away when he left the family residence, and that his wife, therefore, slept on the living room couch. The defendant sought to establish the inference that a jealous Trzcinski had discovered the babysitter on the couch and, mistaking her for his wife, stabbed her repeatedly.

1. The jury heard significant testimony that in the morning after the killing the defendant made incriminating statements to his stepfather, Roland Weed. That testimony came not directly from Weed but through the reading of a transcript of what Weed had said at a pretrial hearing in this case. During the trial, Weed successfully asserted on Fifth Amendment grounds that he could not be compelled to testify (see *Commonwealth* v. *Weed,* 17 Mass. App. Ct. 463 [1984]), and the judge declared him unavailable as a witness. In portions of his transcribed testimony admitted in evidence, Weed stated that in the early daylight hours of July 1, 1983, the defendant had told him that he had done "something terrible," that he had "killed someone," that there was "a lot of hate" in him, and he guessed that "if it wasn't her, it would have been somebody else." If this evidence was not admissible, quite obviously its admission constituted reversible error.

The pretrial hearing at which Weed testified was held in response to the defendant's motion in limine to suppress his July 1 statements on the grounds that they were not the product

of a rational intellect and were not voluntary. The judge heard witnesses and, in a ruling not challenged on appeal, denied the motion. Weed testified at this pretrial hearing under oath; his testimony was transcribed by an official stenographer; and the defendant was present and was represented by counsel.

Although defense counsel cross-examined Weed, the defendant argues that the judge restricted his questioning so that the admission of Weed's testimony denied the defendant his constitutional right to confront witnesses against him.[1] We shall (a) assess the extent of the asserted restriction of cross-examination, (b) discuss Sixth Amendment principles governing the admission of Weed's recorded testimony, and finally (c) consider whether, in the circumstances in which the judge admitted that testimony, the constitutional standard was satisfied.   .

a. The defendant sought to demonstrate through cross-examination that Weed was biased in favor of the Commonwealth because Weed and his wife, the defendant's mother, wanted to avoid the threat of prosecution as accessories after the fact to murder. On direct examination Weed admitted that the information he first gave to the police after the killing was not true. Each time the Commonwealth sought to establish on direct examination that the Weeds had helped the defendant conceal evidence of the killing, the judge sustained the defendant's objection. On cross-examination Weed testified that an assistant district attorney had told him on July 12, 1983, that Mrs. Weed was in trouble because she had helped her son after the alleged crime. When defense counsel asked Weed whether the assistant district attorney also had told him that a mother could not be prosecuted for helping her son, the judge asked defense counsel to explain the relevance of the question to the voluntariness of the defendant's admissions. Perhaps for tactical reasons, defense counsel did not do so; he acquiesced

---

[1] The defendant has relied on both art. 12 of Massachusetts Declaration of Rights and the Sixth Amendment to the Constitution of the United States. The defendant makes no claim that the standard to be applied under art. 12 is more rigorous than that established under the Sixth Amendment.

in the judge's suggestion of irrelevance and abandoned that line of questioning.[2]

Weed's bias was, of course, a relevant issue at the pretrial hearing. If Weed had been improperly pressured to testify falsely in favor of the Commonwealth, that fact might have detracted substantially from the credibility due Weed's description of the defendant's mental and physical condition at the time he allegedly made damaging admissions to Weed (as well as perhaps raising doubt as to whether the defendant made the admissions at all).

b. To meet Sixth Amendment requirements, the Commonwealth was obliged to show not only that Weed was unavailable as a witness (a point not in contention), but also that his transcribed testimony bore "adequate 'indicia of reliability.' " *Ohio v. Roberts,* 448 U.S. 56, 65-66 (1980) (preliminary hearing testimony admissible). The Supreme Court has concluded that in such a case the underlying purpose of the confrontation clause may be met if the hearsay is marked with appropriate "trustworthiness." *Id.* See *Mancusi v. Stubbs,* 408 U.S. 204, 213 (1972) (prior trial testimony admissible); *California v. Green,* 399 U.S. 149, 165 (1970) (preliminary hearing testimony admissible). "[H]earsay rules and the Confrontation Clause are generally designed to protect similar values." *Id.* at 155. "Reliability can be inferred without more in a case

---

[2] The significant colloquy was as follows:

DEFENSE COUNSEL: "Were you told that by the District Attorney?"

THE JUDGE: "Now wait . . . please. Let's assume that all this happened that you're asking him. What relevance does it have to this hearing?"

DEFENSE COUNSEL: "I'll go on."

DEFENSE COUNSEL: "Now, — "

THE JUDGE: "No, I mean tell me. What relevance does it have? The only thing that I've got to decide in this is was his statement that of a rational intellect and I'm going to let the jury listen."

DEFENSE COUNSEL: "I agree."

THE JUDGE: "And what he told his wife and what his wife did or what he did has got absolutely nothing to do with this hearing. Now when we get in front of the jury as to what caused him to make this statement, that's a different story. I'm going to stop you there."

DEFENSE COUNSEL: "Okay, thank you."

where the evidence falls within a firmly rooted hearsay exception." *Ohio* v. *Roberts, supra* at 66. In other situations, the evidence is admissible only if the prosecution makes "a showing of particularized guarantees of trustworthiness." *Id.* Cf. *California* v. *Green, supra* at 155-156 (Confrontation clause and hearsay rules do not completely overlap).

The defendant did not claim below, nor does he here, even as part of an argument under G. L. c. 278, § 33E, that Weed's prior recorded testimony was inadmissible as a matter of this State's law of evidence. The elements of the prior recorded testimony exception to the hearsay rule and constitutional considerations bearing on the indicia of reliability of prior recorded testimony have certain common features. See, e.g., *Commonwealth* v. *Ortiz,* 393 Mass. 523, 531-532 (1984); *Commonwealth* v. *Bohannon,* 385 Mass. 733, 740-749 (1982); *Commonwealth* v. *Canon,* 373 Mass. 494, 500-501 (1977), cert. denied, 435 U.S. 933 (1978). The exception to the hearsay rule permits the admission of prior recorded testimony "where the prior testimony was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Meech,* 380 Mass. 490, 494 (1980). See *Commonwealth* v. *Martinez,* 384 Mass. 377, 381 (1981). The Supreme Court of the United States has left open the question whether the opportunity to cross-examine alone will satisfy the "indicia of reliability" requirement. *Ohio* v. *Roberts,* 448 U.S. at 61-62, 70. We need not decide the admissibility of Weed's testimony as prior recorded testimony under our common law rule. If the standards of the confrontation clause are met in the admission of Weed's testimony, the interests of justice test applied under G. L. c. 278, § 33E, is also met.

c. Weed's transcribed testimony bore adequate "indicia of reliability" to justify its admission at trial. The defendant's sole argument is that Weed's testimony lacked reliability because he was not fully cross-examined on the possibility that

he may have lied in order to protect his wife and himself from prosecution as accessories to the crime. As we noted earlier, the judge did not foreclose the inquiry but rather asked the defendant to explain the relevance of possible police and prosecutorial pressure on Weed. Defense counsel abandoned the point without accepting the judge's invitation. The defendant should have had the same motive to cross-examine Weed at the pretrial hearing on the relevant issue of bias in favor of the Commonwealth as he would have had if Weed had testified in person at trial. The question, therefore, is whether Weed's recorded testimony lacked sufficient reliability merely because the defendant did not adequately pursue the opportunity to cross-examine Weed on bias.

The defendant has an obligation to demonstrate that pursuit of the bias point would have had some practical impact in exposing the unreliability of Weed's testimony. Although Weed's initial unwillingness to give the police a truthful statement implicating his stepson may well have been overcome by pressure from the police and the investigating prosecutor, we see no ground for concluding that Weed testified untruthfully to help himself and his wife. In a lobby conference held to determine what portions of Weed's testimony were to be read to the jury, defense counsel succeeded, over the Commonwealth's objection, in excluding Weed's testimony that the assistant district attorney, who was investigating the matter and who ultimately was the prosecutor, put "a lot of pressure on" him.[3] The defense, it seems, was seeking to keep from

---

[3] The excluded questions and answers are as follows:

THE PROSECUTOR: "Did you tell them the truth about what had happened while you and Teddy were in the car out in front of Dunkin Donuts?"

THE WITNESS: "I didn't tell them the conversation that Teddy and I had, no."

THE PROSECUTOR: "You left that out?"

THE WITNESS: "Yes, I did."

THE PROSECUTOR: "Why was that?"

THE WITNESS: "I didn't see no need to tell them that. I wasn't going to just start yakking off, you know. I knew I was going to tell it eventually but I wanted him to have a chance to have a lawyer. And it wasn't until I had a lot of pressure on me that I did tell them and you recall that too."

THE PROSECUTOR: "Yes, Sir."

the jury testimony showing Weed's bias against the Commonwealth. Nothing in this record suggests that the defense could have shown or really believed that the Commonwealth had pressured Weed into falsely incriminating the defendant. The restriction of Weed's cross-examination was of no demonstrated practical significance. Weed's transcribed testimony was properly admitted.

2. On motion of the Commonwealth following the defendant's indictment and after hearing, the judge ordered the defendant to submit a blood sample for analysis. An expert testified at trial that blood found at the scene of the killing had characteristics similar to the defendant's blood and that only 5.6% of the Caucasian population has blood with the same characteristics.

The defendant argues that the judge erred in ordering him to submit a blood sample. He characterizes his objection in terms of a seizure and search in violation of the Fourth Amendment to the Constitution of the United States and makes no specific reference to art. 14 of the Massachusetts Declaration of Rights.

An order compelling one to give a blood sample is a search and seizure under the Fourth Amendment. *Schmerber* v. *California,* 384 U.S. 757, 767 (1966). A postindictment order to obtain a blood sample for identification purposes should be based on a showing of probable cause made at an adversary hearing. See *Winston* v. *Lee,* 470 U.S. 753, 760-761, 763 n.6 (1985); *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 676 (1974). Cf. *Commonwealth* v. *Beausoleil, ante* 206, 222-223, (1986). At such a hearing the Commonwealth must show that a sample of the defendant's blood will probably produce evidence relevant to the question of the defendant's guilt. See *Schmerber* v. *California, supra* at 768-769; *Matter of an Investigation into the Death of Abe A.,* 56 N.Y. 2d 288, 291 (1982); Unif. R. Crim. P. 434(a), 10 U.L.A. 153 (1974).

The indictment, the uncontroverted facts stated in an affidavit signed by the prosecutor, and the uncontroverted additional facts stated by the prosecutor in open court warranted a finding of probable cause. The Commonwealth thus adequately just-

ified the relatively minor intrusion so as to make the search "reasonable." See *Winston* v. *Lee, supra* at 766.

The judge was not limited in determining probable cause to consideration of the facts stated in the affidavit, as is the case in passing on the propriety of the issuance of a search warrant. G. L. c. 276, § 2B (1984 ed.). See *Commonwealth* v. *Sheppard,* 394 Mass. 381, 388 (1985); *Commonwealth* v. *Upton,* 394 Mass. 363, 367-368 (1985). The judge rightly could rely on unchallenged, transcribed statements of fact made in open court by the prosecutor, supplemented by the affidavit and the indictment. A hearing on such a motion at which the defendant may be heard (and all facts will be set forth in a form capable of appellate review) provides even more protection than do search warrant procedures. See *Winston* v. *Lee,* 470 U.S. at 763 n.6; *State* v. *Easthope,* 668 P.2d 528, 532 (Utah 1983).[4]

3. We consider briefly the defendant's other arguments.

a. The warrrant issued on the day of the killing, authorizing a search of the defendant's motor vehicle, was based on demonstrated, substantial grounds for believing that evidence

---

[4] The affidavit adequately demonstrated facts which, if based on a reliable source, supported the issuance of the order. It stated that the victim, who was stabbbed many times, had type B blood; type O blood was found at the scene; the defendant had fresh cuts on one hand the day of the killing; and there was blood on the defendant's automobile that day. The affidavit, signed by the prosecutor, did not disclose the source of his information. Standing alone, the affidavit might not meet the "veracity of the informant" test applicable in the Commonwealth to applications for search warrants. See *Commonwealth* v. *Upton,* 394 Mass. at 374-376. The accuracy of facts stated in the affidavit was not, however, disputed at the hearing on the motion, nor did the defendant there challenge the reliability of the affiant's sources.

The affidavit should have been "signed by a person with personal knowledge of the factual basis of the motion." Mass. R. Crim. P. 13(a) (2), 378 Mass. 871 (1979). Cf. Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). A judge may require that all facts demonstrating probable cause be set forth in affidavits signed by persons having personal knowledge of those facts. A prosecutor who signs an affidavit providing underlying facts not within his personal knowledge in support of a motion for a court order may, in the circumstances, violate at least the spirit of S.J.C. Rule 3:07, DR 5-102 (A), as appearing in 382 Mass. 780 (1981) (concerning attorneys acting as witnesses). The fact that an assistant district attorney signed the affidavit in this case does not, however, constitute reversible error.

relating to the crime probably would be found in the defendant's motor vehicle. See *Commonwealth* v. *Truax, ante* 174, 178 (1986), and cases cited; *Commonwealth* v. *Burt,* 393 Mass. 703, 715 (1985). Over objection, blood samples taken from the vehicle were introduced at trial. The careless failure of the affiant-police officer to strike inapplicable words from the application form was not a fatal defect. See *Commonwealth* v. *Truax, supra* at 179-180.

b. Once again the Commonwealth reaches for a trial judge's corrective instructions to cover its own improper jury argument. In his opening statement to the jury, the prosecutor (who is not appellate counsel) told the jury that Leo Trzcinski talked in detail to the police on the day of the killing and that he "[a]lways cooperated, always told the truth." This expression of his personal opinion as to the credibility of a key witness was not merely an "artless choice of words," as the Commonwealth states in its brief. It was a violation of the prosecutor's ethical obligations. S.J.C. Rule 3:07, DR 7-106 (c) (4), as appearing in 382 Mass. 787 (1981). S.J.C. Rule 3:08, PF 13 (b), as appearing in 382 Mass. 802 (1981). That expression of opinion also threatened the defendant's right to a fair trial. See *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 645 (1974); *Commonwealth* v. *Smith,* 387 Mass. 900, 912 (1983); *Commonwealth* v. *Collins,* 386 Mass. 1, 14 (1982).

After the prosecutor's opening statement, the defendant moved for a mistrial. The judge said he would comment to the jury about the matter and did so after a brief recess. Stating that an opening statement was not evidence, the judge also told the jury that during the prosecutor's opening remarks "he characterized somebody as truthful or something like that. That really has no place in an opening statement. It's up to you to determine who is truthful and who isn't truthful." This timely instruction, to which the defendant did not object, was sufficient to correct the prosecutor's improper statement. The judge acted within his discretion in giving curative instructions and in denying the motion for a mistrial. See *Commonwealth* v. *Fazio,* 375 Mass. 451, 458 (1978); *Commonwealth* v. *Gouveia,* 371 Mass. 566, 572 (1976); *Commonwealth* v. *Borodine,* 371, Mass. 1, 9-10 (1976), cert denied, 429 U.S. 1049 (1977).

c. While in custody at a hospital following the murder, the defendant made incriminating statements to third persons that were overheard by plainclothes police officers who were guarding him. He also made a statement directly to one of the officers. The defendant moved unsuccessfully to suppress these statements, to which the police officers subsequently testified at trial. Because none of the defendant's statements was made in response to interrogation, and there was no evidence of police deception, Miranda warnings were not required.

Statements made to third persons not acting as agents of the government which police overhear are protected neither by the declarant's privilege against self-incrimination (*Commonwealth* v. *Allen,* 395 Mass. 448, 453-454 [1985]), nor by his constitutional right to counsel (*id.* at 454). The defendant's statements made directly to a police officer were not solicited and, therefore, were admissible. See *Commonwealth* v. *Lanoue,* 392 Mass. 583, 588 (1984); *Commonwealth* v. *Doucette,* 391 Mass. 443, 449 (1984). The defendant does not argue here that his statements were not made freely and voluntarily. The presence of a police officer in the defendant's hospital room was neither an unconstitutional intrusion nor an unlawful invasion of his privacy (G. L. c. 214, § 1B [1984 ed.]) requiring suppression of the defendant's statements.

4. The defendant is not entitled to relief under G. L. c. 278, § 33E.

*Judgment affirmed.*