## In the Matter of Richard R. Lavigne.

Hampden. May 3, 1994. - November 16, 1994.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, Lynch, & O'Connor, JJ.

*Practice, Criminal*, Report, Appeal. *Search and Seizure*, Warrant, Blood sample, Probable cause. *Constitutional Law*, Search and seizure. *Probable Cause. Due Process of Law*, Seizure of blood sample.

A party has a right to seek leave to appeal, in accordance with the procedure set forth in Mass. R. Crim. P. 15 (b) (2), applicable to the denial or grant of a motion to suppress evidence, a judge's order allowing or denying a motion for return of a blood sample given under compulsion of a warrant. [833]

General Laws c. 276, § 1, authorizes a prearrest, preindictment search warrant for the seizure (extraction) of a blood sample based on a common law justification for its issuance. [834-835] Liacos, C.J., dissenting.

Seizure of a blood sample pursuant to a warrant before arrest or indictment is reasonable in circumstances where there is probable cause to believe that the person whose blood is sought committed the crime and that the blood found at the scene of the crime was relevant to the Commonwealth's investigation, and where that person has been afforded a hearing at which a judge makes findings as to the degree of intrusion and the need for the evidence of the blood sample. [835-836] O'Connor, J., dissenting.

This court ordered the matter remanded for a hearing and findings with respect to the issuance of a warrant before arrest or indictment for the extraction of a blood sample. [836] Liacos, C.J., dissenting.

Application for a search warrant dated September 2, 1993.

Motions by the petitioner for the return of a sample of his blood and by the Commonwealth for access to the blood sample were heard by *John F. Moriarty*, J., and the matter was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct appellate review.

*Patricia L. Garin* (*Max D. Stern* with her) for the petitioner.

*Elizabeth Dunphy Farris*, Assistant District Attorney, for the Commonwealth.

*Beth L. Eisenberg*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

NOLAN, J. This appeal by Richard R. Lavigne from a Superior Court judge's order denying his motion for the return of a sample of his blood and allowing the Commonwealth's motion for access to the blood sample requires us to decide whether, and if so, in what circumstances, a judge may order a person not charged with a criminal offense nor the subject of a grand jury investigation to have blood extracted from his body. Because we decide that the compelled extraction of a person's blood for the purpose of testing its immutable characteristics to assist the Commonwealth in investigating a crime without first affording him notice and an opportunity to be heard violates his rights, we reverse the judge's order denying Lavigne's motion for a return of the sample of his blood and remand the case for proceedings consistent with this opinion.

On September 2, 1993, Thomas J. Daly of the State police presented to the judge an application for a warrant to seize a sample of Lavigne's blood for the purpose of blood-typing and deoxyribonucleic acid (DNA) type comparison. The application requested authorization to cause a sample of Lavigne's blood to be drawn by trained medical personnel at a medical facility, using reasonable force only if necessary, permission to transport Lavigne to a convenient place for that purpose, and authorization to enter Lavigne's home for that purpose. The application was accompanied by an affidavit of Daly. On the basis of the facts set forth in the affidavit, the judge, on September 3, 1993, determined that Lavigne's blood would probably produce evidence relevant to the question of Lavigne's guilt or innocence in the 1972 murder of Daniel Croteau and that there was probable cause for believing that Lavigne was guilty. Accordingly, he issued a warrant in the form requested in the application. The judge also

ordered the medical facility to maintain custody of any blood seized pending a hearing and further order of the court. Later the same day, blood was drawn in accordance with the warrant.

Immediately after the blood extraction, Lavigne filed a motion to have the blood sample returned to him. The Commonwealth moved to have the sample released to it for testing. The Commonwealth desires to conduct tests on Lavigne's blood sample and compare the results with those conducted on blood found at the scene of the crime. Although Lavigne is its prime suspect in Croteau's murder, the Commonwealth has not charged him with the offense nor caused him to be the subject of a grand jury investigation. After hearing, the judge denied Lavigne's motion and allowed the Commonwealth's motion. However, because of the novelty and complexity of the issues involved, the judge stayed his order to enable Lavigne to seek appellate review. After Lavigne appealed to the Appeals Court, the stay was extended for the pendency of this appeal. We granted Lavigne's application for direct appellate review. We reverse.

Before we address whether the compelled extraction of a sample of Lavigne's blood was proper, we must first decide whether Lavigne has a right of appeal.

1. *Appropriateness of review.* The Commonwealth asserts that the judge's order, denying Lavigne's motion for return of the blood sample and allowing the Commonwealth's motion for access, is an interlocutory order and not presently appealable. We need not decide whether the judge's order is a final order because we shall treat the judge's stay as if he had made a report sought by him under Mass. R. Crim. P. 34, 378 Mass. 905 (1979). The case is properly before us. For the future in such circumstances, leave to appeal from the allowance or denial of such a request for a search should be sought as in the case of a denial or grant of a motion to suppress evidence. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979).

2. *Legality of extraction of blood.*

a. *General Laws c. 276, § 1.* Lavigne argues that the judge was without authority under G. L. c. 276, § 1 (1992 ed.), to issue the warrant in question. Section 1 categorizes five types of items which may be seized pursuant to a warrant.[1] The Commonwealth concedes that the blood seized in this case falls within none of these categories.[2] However, it argues that the search warrant for the seizure of a sample of Lavigne's blood was permitted under the following language of § 1: "Nothing in this section shall be construed to abrogate, impair or limit powers of search and seizure granted under other provisions of the General Laws or under the common law." Specifically, the Commonwealth argues that the seizure of the blood sample is authorized under our com-

---

[1]This section provides in pertinent part as follows:

"A court or justice authorized to issue warrants in criminal cases may, upon complaint on oath that the complainant believes that any of the property or articles hereinafter named . . . if satisfied that there is probable cause for such belief, issue a warrant identifying the property and naming or describing the person or place to be searched and commanding the person seeking such warrant to search for the following property or articles:

"First, property or articles stolen, embezzled or obtained by false pretenses, or otherwise obtained in the commission of a crime;

"Second, property or articles which are intended for use, or which are or have been used, as a means or instrumentality of committing a crime, including, but not in limitation of the foregoing, any property or article worn, carried or otherwise used, changed or marked in the preparation for or perpetration of or concealment of a crime;

"Third, property or articles the possession or control of which is unlawful, or which are possessed or controlled for an unlawful purpose; except property subject to search and seizure under sections forty-two through fifty-six, inclusive, of chapter one hundred and thirty-eight;

"Fourth, the dead body of a human being;

"Fifth, the body of a living person for whom a current arrest warrant is outstanding.

"Nothing in this section shall be construed to abrogate, impair or limit powers of search and seizure under other provisions of the General Laws or under the common law."

[2]The parties do not dispute that the sample of Lavigne's blood is neither contraband, an instrumentality, nor a fruit of Croteau's murder and merely constitutes evidence relating to Croteau's murder.

mon law.[3] We agree that § 1 permits a search warrant based on a common law justification for its issuance.

There already exists the right to search the body of one who has been arrested on probable cause. See *Commonwealth* v. *Brown*, 354 Mass. 337, 342-343 (1968); G. L. c. 276, § 1, Fifth (warrant authorized to search body of person for whom an arrest warrant is outstanding). In extending the common law of a body search to the extraction of blood, we are simply developing the common law. Under this common law rule, there must exist probable cause for believing that the person whose blood the Commonwealth seeks has committed the crime. The judge has already made this finding based on the affidavit submitted in support of the issuance of the warrant. Additionally, the person is entitled to a hearing from which the judge must make findings as to the degree of intrusion (see *Schmerber* v. *California*, 384 U.S. 757, 771 [1966]) and the need for the evidence of the blood sample.

The Commonwealth is required to demonstrate a sufficient nexus between the evidence sought and Croteau's murder. Under the Fourth Amendment to the United States Constitution, "[t]here must . . . be a nexus . . . between the item to be seized and criminal behavior." *Warden, Md. Penitentiary* v. *Hayden*, 387 U.S. 294, 307 (1967). "[A] search for evidence to prove the commission of a crime [is not barred] provided there is probable cause for the belief that the evidence sought will aid in a particular apprehension or conviction." *Commonwealth* v. *Murray*, 359 Mass. 541, 547 (1971), citing *Warden, Md. Penitentiary* v. *Hayden, supra* at 306-307.

To satisfy our common law requirement the Commonwealth must establish probable cause to believe that Lavigne

---

[3]The Commonwealth also cites *Commonwealth* v. *Murray*, 359 Mass. 541 (1971), for the proposition that we have upheld the issuance of a search warrant authorizing the seizure of "mere evidence" under the "common law" paragraph in G. L. c. 276, § 1. However, contrary to the Commonwealth's assertion, in *Murray*, we did not uphold the seizure of the defendant's clothing under the "common law" paragraph, but held that the clothing seized was covered under the reference in § 1 to "articles worn . . . in the . . . perpetration of . . . a crime." *Id.* at 547.

committed the crime and that the blood found at the scene of Croteau's murder is relevant in the Commonwealth's investigation of the crime, that is, that the identity of the source of the blood would aid in its investigation of Croteau's murder.[4] See *Commonwealth* v. *Murray, supra.* Cf. *Commonwealth* v. *Trigones,* 397 Mass. 633, 640 (1986) ("A postindictment order to obtain a blood sample for identification purposes should be based on a showing of probable cause made at an adversary hearing. . . . At [which] the Commonwealth must show that a sample of the defendant's blood will probably produce evidence relevant to the question of the defendant's guilt"). Finally, in deciding whether to order an extraction of blood, the judge "must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect's constitutional right to be free from bodily intrusion on the other." *Matter of an Investigation into the Death of Abe A.,* 56 N.Y.2d 288, 291 (1982).

If the judge makes the findings that we have prescribed, the seizure of the blood would be reasonable. If the seizure is reasonable, it would not violate State and Federal constitutional protections against either unreasonable searches and seizures or the denial of due process of law. *Gerstein* v. *Pugh,* 420 U.S. 103, 117-119 (1975).

3. *Conclusion.* For the foregoing reasons, we reverse the judge's order denying Lavigne's motion for a return of the sample of his blood and remand the case for proceedings consistent with this opinion.

*So ordered.*

---

[4] The Commonwealth need not demonstrate that the reliability of the test results will make these results admissible at any trial. If and when the Commonwealth prosecutes Lavigne, Lavigne can fully contest the reliability of the test results at a suppression hearing.

LIACOS, C. J. (dissenting). I cannot agree that our common law permits a warrant to issue authorizing the forcible taking of blood from an unarrested, uncharged, and unindicted citizen of the Commonwealth. Accordingly, I dissent.

The court concludes that Massachusetts common law somehow provides for the issuance of a warrant for a body search for the extraction of blood in the circumstances of this case. The court is announcing a new rule of common law today, but it does so without reasoned and convincing analysis. I believe the court is engaging in arbitrary decisionmaking. In that I cannot join.

General Laws c. 276, § 1, provides, in part, that "[n]othing [in § 1] shall be construed to abrogate, impair or limit powers of search and seizure . . . under the common law." The first question we must answer, then, is whether the common law as it existed in the past permits the type of search at issue in this case.[1]

On review of the common law of the Commonwealth, I have found no authorization for the issuance of search warrants for mere evidence. The Commonwealth has not advanced any compelling argument in favor of interpreting the common law now to permit such searches. I see no reason to do so.

If we were to engage in the expansion of the common law in this area, we should do so only after reasoned and thoughtful analysis and logical inquiry. The court does not do this, however. Instead, the court merely notes that "[i]n extending the common law . . . we are simply developing the common law." *Ante* at 835. The court then goes on to recite the probable cause requirements for the issuance of this type of warrant. In doing so, the court utterly fails to explain why a warrant may issue at all. Thus, the court does not explain the bases on which it purports to "develop" the common law.

---

[1]Indeed, even the Commonwealth agrees that the issuance of this type of warrant is permissible, if at all, only under the "common law" provision of G. L. c. 276, § 1.

The court relies on *Commonwealth* v. *Trigones*, 397 Mass. 633 (1986), and *Commonwealth* v. *Murray*, 359 Mass. 541 (1971), in reaching its conclusion today. Neither case is relevant here, however, because neither case dealt with our common law or even with our Constitution. Instead, the results in both cases were based on the Fourth Amendment to the United States Constitution. See *Trigones, supra* at 640-641; *Murray, supra* at 547 (relying on Fourth Amendment and express provision of G. L. c. 276, § 1, Second). In addition, the court uses *Commonwealth* v. *Brown*, 354 Mass. 337, 342-343 (1968), as the starting point from which it purports to expand our common law in this case. I cannot see the logic by which the court leaps from allowing the search of the pockets of a person incidental to the lawful arrest of that person, *id.*, at 341, 343, to the forced extraction of blood from one who has been neither arrested nor indicted.

I comment briefly on the disposition of this case ordered by the court. As I read the court's opinion, the Commonwealth must return to Lavigne the blood sample seized from him, and if it wishes to obtain another sample, it must reapply for a search warrant which may be issued only after a hearing at which Lavigne shall be permitted to participate. Even if I were to agree that our existing common law would allow this type of search and that, therefore, a warrant may issue pursuant to G. L. c. 276, § 1, I would not remand this case for further proceedings. Lavigne has been neither arrested nor indicted, and it appears from the record that the Commonwealth does not have probable cause to arrest or to indict him at this point. As the court suggests, the probable cause necessary for the issuance of a warrant here would subsume probable cause to arrest or to indict Lavigne. Absent a change in circumstances which would support a finding of probable cause to arrest or indict Lavigne, the Commonwealth should not be permitted to proceed in this matter.[2]

---

[2]It should be noted that the case of *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986), which the court cites was, unlike this case, a case

Because I do not believe that our common law permits the issuance of warrants for mere evidence searches, I conclude that no warrant may issue in the circumstances of this case. Moreover, since there currently does not exist probable cause to arrest or to indict Lavigne, I would not permit the Commonwealth to proceed further. For these reasons, I dissent.


O'CONNOR, J. (dissenting in part). I agree with the court that the order denying Lavigne's motion for a return of his blood should be reversed and that the matter should be remanded to the Superior Court for a hearing in which Lavigne will be entitled to participate. I also agree with the court that G. L. c. 276, § 1, "permits a search warrant based on a common law justification for its issuance," *ante* at 835, and that the common law should allow a judge to order the compelled extraction of a person's blood in appropriate circumstances. I do not agree, however, with the court's articulation of the circumstances in which such an order should be permitted. Specifically, I do not agree that Lavigne's extracted blood should be available to the Commonwealth if, after a hearing, the Commonwealth only "establish[es] probable cause to believe that Lavigne committed the crime and that the blood found at the scene of Croteau's murder is relevant in the Commonwealth's investigation of the crime, that is, that the identity of the source of the blood would aid in its investigation of Croteau's murder." *Ante* at 835. I would require that the Commonwealth establish probable cause to believe that the extracted blood would inculpate Lavigne in Croteau's murder. Such a rule would be simpler, clearer, and more consistent with our traditional respect for individual rights than the formula announced by the court.

It seems highly likely that, if the Commonwealth is able to establish probable cause to believe that Lavigne committed

involving a postindictment order for the defendant to submit a blood sample. It is inapposite to the facts here where no finding of probable cause of guilt has been attempted.

the murder, the Commonwealth also will be able to establish probable cause to believe that blood found at the scene of the murder, assuming that it is not the victim's blood and that it was left at the scene at a relevant time, was Lavigne's blood. If the Commonwealth is able to make such a showing, the Commonwealth will have established probable cause to believe that the extraction and testing of Lavigne's blood will produce *evidence* of someone's, namely Lavigne's, guilt of a crime. That is a permissible justification for a search. However, if the Commonwealth can only establish probable cause to believe that Lavigne's blood will either inculpate him, exculpate him, or neither, the Commonwealth will have failed to show that there is probable cause to believe that the extraction and testing of Lavigne's blood will produce evidence to prove anyone's guilt of a crime. We held in *Commonwealth* v. *Murray*, 359 Mass. 541, 547 (1971), from which the court quotes, *ante* at 835, that "a search for evidence to prove the commission of a crime [is not barred] provided there is probable cause for the belief that the evidence sought will aid in a particular apprehension or conviction." Curiously, today the court holds that forced extraction of blood, which is far more invasive than the ordinary search, is permissible even without such probable cause. The possible ramifications of such a departure, while unclear, are troubling.