Doerfer, J.
The defendantt Phai You, has been indicted for first degree murder and possession of a firearm. The Commonwealth has now moved for an order to take blood and saliva samples from the defendant. For the reasons which follow, the Commonwealth’s motion is allowed.
BACKGROUND
On December 26, 1993, at approximately 2:30 a.m., the Lowell Police received a report that the deceased body of Bunra Ouer was discovered by certain of his relatives outside of “Clyde’s” billiards hall. The victim’s relatives indicated that they had received information that Bunra Ouer had been shot by an individual named “Chuckie.”[1] A subsequent autopsy indicated that the victim had been shot a total of four times. Two of the bullets had been fired at close proximity to the right side of the face. Two additional shots had been fired into the neck and shoulder of the victim.
Subsequent investigation revealed that on December 26, 1993, at approximately 12:15 a.m., there was a fight inside of Clyde’s involving fifteen rival gang members which resulted in head injuries to at least one individual. Following this altercation, the owner of Clyde’s announced that they would be closing, at which time several individuals left Clyde’s. The victim, a gang member, allegedly stated that he wanted to fight a rival gang member. Certain witnesses indicated that the defendant, a member of a rival gang, subsequently removed a .38 caliber revolver and fired at the victim. The defendant allegedly fled from the scene, but was ultimately apprehended and arrested the following day. The police found approximately thirty shotgun shells and a front page newspaper article regarding the murder in the apartment within which the defendant was located.
During the course of the investigation, various items of physical evidence were submitted to the Department of State Police Crime Laboratory for preliminary testing and analysis. The Commonwealth contends, and has submitted an affidavit in support from Karolyn LeClaire (“LeClaire”), a chemist with the Massachusetts Department of Public Safety, that *34 blood and saliva samples from the defendant are necessary to conduct a comparative analysis of the blood stains. The Commonwealth further asserts that an expert opinion as to whether the defendant, Chan Them Em (AKA “Flattop”), or the victim was or was not a probable source of the blood stains would furnish material evidence relevant to the guilt or innocence of the defendant. The Commonwealth also contends that there is a risk that the chemists may only be able to conduct the test once and, without every relevant blood sample, the results could be inconclusive. The defendant asserts that the Commonwealth has failed to demonstrate that taking blood and saliva samples from the defendant will probably produce evidence relevant to the question of the defendant’s guilt.
DISCUSSION
“An order compelling the production of a blood sample is an intrusion that implicates protections provided by the Fourth Amendment to the United States Constitution.” Commonwealth v. Downey, 407 Mass. 472, 476 (1990), citing Schmerber v. California, 384 U.S. 757, 767 (1966). However, “the Fourth Amendment’s proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.” Schmerber, supra at 768. In Schmerber v. California, 382 U.S. 757 (1966), the United States Supreme Court held that, where a physician took a blood sample at police direction from an injured arrestee over his objection, the extraction of blood violated neither the due process clause nor the Fourth Amendment. LaFave, Criminal Procedure §3.4 at 217. “The Court identified three factors which were critical to that holding: (i) there had been a ‘clear indication’ that the extraction would produce evidence of a crime; (ii) the test was ‘a reasonable one’ in the sense that such tests are ‘commonplace’ and involve ‘virtually no risk, trauma, or pain’; and (iii) the test ‘was performed in a reasonable manner,’ in that the blood was ‘taken by a physician in a hospital environment according to accepted medical practices.’ ” Id. quoting Schmerber, supra at 770-72.
In Commonwealth v. Trigones, 397 Mass. 633 (1986), the Supreme Judicial Court affirmed the trial court’s order compelling the defendant, who had been indicted for murder, to provide a blood sample. The court stated that “[a] postindictment order to obtain a blood sample for identification purposes should be based on a showing of probable cause made at an adversary hearing.” Id. at 640. “At such a hearing the Commonwealth must show that a sample of the defendant’s blood will probably produce evidence relevant to the question of the defendant’s guilt.” Id., citing Schmerber v. California, supra at 768-69.
Most recently, in In the Matter of Lavigne, 418 Mass. 831 (1994), the Supreme Judicial Court announced broader guidelines for permitting the seizure of a blood sample. In Lavigne, the court held that, under the common law, the Commonwealth could obtain a blood sample from a suspect in a murder case as long as there existed “probable cause for believing that the person whose blood the Commonwealth seeks has committed the crime.” Id. at 835. The court explained that “the Commonwealth is required to demonstrate a sufficient nexus between the evidence sought and [the] murder.” Id. “Additionally, the person is entitled to a hearing from which the judge must make findings as to the degree of intrusion (citations omitted) and the need for the evidence of the blood sample.” Id. The court declined to adopt the standard proposed by Justice O’Connor in his dissent, which would require the Commonwealth to establish “probable cause to believe that the extracted blood would inculpate” the suspect or defendant before allowing blood extraction. Id. at 839 (O’Connor, J.) (dissenting in part).
In the present case, there is clearly probable cause to believe that the defendant, who has already been indicted by the grand jury, committed the murder. Various witnesses have made statements in this regard. Further, there is evidence that several rival gang members engaged in a fight in Clyde’s prior to the murder. The defendant denies that he was present at the scene of the crime. Thus, the presence of the defendant’s blood on any of the articles of clothing could, at the very least, place him at the scene on the night in question. Moreover, the absence of the defendant’s blood on any of the seized items would further “produce evidence relevant to the question of the defendant’s guilt.” Trigones, supra at 640. Thus, the court concludes that the blood found at the scene of Bunra Oeur’s murder has a sufficient nexus to the criminal behavior charged in the indictment because, in obtaining the identity of the source of the blood, the Commonwealth would clearly be aided in its investigation and reconstruction of the fatal confrontation which took place. See Lavigne, supra at 836-37.
The court further finds that the taking of blood and saliva samples from the defendant is an intrusion of minor degree. See Schmerber, supra at 771 (blood extraction involves virtually no risk, trauma, or pain); Trigones, supra at 640-41 (blood extraction is a relatively minor intrusion). The Commonwealth has represented that the blood and saliva samples will be taken in a reasonable manner by trained medical personnel. Finally, the court finds that the Commonwealth, in its affidavit detailing the process of comparative blood typing, has sufficiently demonstrated “the need for the evidence of the blood sample.” Lavigne, supra at 835.
“In deciding whether to order an extraction of blood, the judge ‘must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect’s[2] constitutional right to be free from bodily intrusion on *35 the other.” Lavigne, supra at 836, quoting Matter of an Investigation into the Death of Abe A., 56 N.Y.2d 288, 291 (1982). From the submissions presented, the court concludes that the Commonwealth has established that a postindictment order for the taking of a sample of the defendant’s blood and saliva is justified in light of the seriousness of the crime, the importance of the test results to the Commonwealth’s investigation, and the relatively minor intrusion of the test to the defendant.
The court is further mindful of the lesson of Com-monwealthv. Bowden, 379 Mass. 472 (1980), in which the Supreme Judicial Court held that “the fact that certain tests were not conducted or certain police procedures not followed could raise a reasonable doubt as to the defendant’s guilt in the minds of the jurors.” Id. at 486. Because the court concludes that the taking of the defendant’s blood and saliva samples is reasonable under the facts of this case, the Commonwealth’s motion is therefore allowed.
ORDER
For the foregoing reasons, the Commonwealth’s Motion for Order for Taking of Blood and Saliva of Defendant is ALLOWED.

The defendant is also known as “Chuckie” and “Piper.”

Under Lavigne, it is unclear whether the taking of blood and saliva samples from a defendant, postindictment, would be subject to an even broader standard.