**UNITED STATES of America**

v.

**Ralph GOODRIDGE and Willie Brown, Defendants.**

**Criminal No. 96–CR–30015–FHF.**

United States District Court,
D. Massachusetts.

Sept. 19, 1996.

---

William J. O'Grady, Springfield, MA, Michael Avery, Perkins, Smith & Cohen, Boston, MA, for Ralph Goodridge.

David P. Hoose, Katz, Sasson & Hoose, Springfield, MA, for Willie Albert Brown.

William M. Welch, II, United States Attorney's Office, Springfield, MA, for U.S.

*MEMORANDUM AND ORDER WITH REGARD TO GOVERNMENT'S MOTION FOR BLOOD SAMPLES (Docket No. 61)*

NEIMAN, United States Magistrate Judge.

The Government has requested the Court, pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (the "Act"), to issue an order compelling Defendants Ralph Goodridge and Willie Albert Brown to provide blood samples for blood type and DNA testing.[1] The Government asserts in its motion that, given the facts of this case, the blood samples will assist it in identifying whose blood was found inside a red Pontiac Grand Am which has been identified as a getaway vehicle in a bank robbery. See also Government's Status Report Regarding Scientific Tests (Docket No. 62). Defendant Brown opposes the motion, seeking its denial, or, at a minimum, an "adversary hearing." Defendant Goodridge has not filed any opposition.

## DISCUSSION

In contending that the Act enables the Court to order blood sampling, the Government relies on cases which have ordered hand-writing exemplars, *United States v. Li*, 55 F.3d 325, 328 (7th Cir.1995) (citing *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281 (1969)), and hand-printing exemplars, *United States v. Rudy*, 429 F.2d 993 (9th Cir.1970).[2] "Although not nearly as common as handwriting exemplars," the Government asserts, "the blood samples constitute a factual inquiry critical to the determination of guilt or innocence." Government's Motion, at 3–4.

Defendant Brown, while not disputing that the Act could provide the Court with the power to issue the writ sought, argues that the Government is essentially engaging in a search for evidence which must first be measured by Constitutional principles. The Court agrees.

There is a clear distinction between the exemplars permitted in the cases cited by the Government and the blood samples sought here. While the former may be considered non-testimonial, the latter raise significant questions under the Fourth Amendment which protects individuals from unreasonable searches and seizures. As the Supreme Court indicated in *Schmerber v. California*, 384 U.S. 757, 762, 86 S.Ct. 1826, 1831, 16 L.Ed.2d 908 (1966), a blood test "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment."

In *Schmerber*, the Supreme Court upheld an extraction of a blood sample without a

---

1. The Act reads as follows: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

2. The Government also relies on *Doe v. United States*, 487 U.S. 201, 205 n. 3, 108 S.Ct. 2341, 2344–45 n. 3, 101 L.Ed.2d 184 (1988). However, in *Doe*, the Supreme Court specifically declined to address the All Writs Act.

warrant due to exigent circumstances. Schmerber had been arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile he had apparently been driving. At the direction of the police, a blood sample was withdrawn from Schmerber by a physician at the hospital. The blood analysis report was admitted into evidence at trial and Schmerber was convicted of driving an automobile under the influence of intoxicating liquor. Weighing Schmerber's rights to be secure in his person with the community's need for evidence, and taking into account the presence of probable cause and the type of medical procedure, the Supreme Court held that the taking of blood did not violate Schmerber's right under the Fourth Amendment to be free of *unreasonable* searches and seizures. "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S.Ct. at 1834.

Even though the Supreme Court indicated that its holding in *Schmerber* involved a "minor" intrusion and did not apply to "more substantial intrusions, or intrusions under other conditions," *id.* at 772, 86 S.Ct. at 1836, it is clear that the intrusion sought here, which presents "other conditions," must also be measured under the Fourth Amendment. That entails finding a "clear indication" that evidence of a crime will be found by the requested intrusion. *Id.* at 770, 86 S.Ct. at 1835–36. As the Supreme Court explained:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a *clear indication* that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Id.* at 769–70, 86 S.Ct. at 1835 (emphasis added). The only difference is that the application of the Fourth Amendment comes not at the point of a warrantless arrest, as in *Schmerber*—which led the Supreme Court to utilize an exigency analysis—but after the defendants have been indicted and arraigned.

■ Defendant argues further that the "clear indication" test may be more exacting than usual search warrant requirements, i.e., probable cause. Overall, the Court agrees. However, the Court believes that probable cause must *first* be found in a manner equivalent to search warrant standards.

As the Supreme Court noted in *Schmerber*, "[s]earch warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 770, 86 S.Ct. at 1835. The Supreme Court continued, "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.* If probable cause is found—i.e., the intrusion is likely to produce evidence of a crime—the Court must then proceed to determine whether or not the intrusion might still be "unreasonable" in terms of the Fourth Amendment. This is, in essence, the added aspect of the clear indication test.

Indeed, it was just this framework which the Supreme Court utilized nearly twenty years after *Schmerber* in *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), when it held that a proposed surgical intrusion into a suspect's left chest area to recover a bullet was unreasonable under the Fourth Amendment where surgery would entail significant medical risks. In short, even when a court finds probable cause, it must also consider whether or not the proposed intrusion poses a threat to the safety or health of the defendant. *Id.* at 761, 105 S.Ct. at 1617. Only then can a court determine whether the defendant's individual interests are outweighed by the community's interests in fairly determining guilt or innocence. *Id.* at 762, 105 S.Ct. at 1617–18.

Accordingly, by October 4, 1996, the Government shall file with the Court such affidavits as it deems appropriate pursuant to search warrant standards which support the issuance of a writ with respect to each Defendant and which describe the medical personnel and procedures which the Government

proposes be utilized to draw the blood samples. Defendants shall file any counter affidavits by October 16, 1996 and the Court will hear oral argument on October 21, 1996, at 2:00 p.m.

One further note: given the nature of the medical procedure, the Court does not believe that an evidentiary hearing is necessary. Compare *Winston,* 470 U.S. at 763 n. 6, 105 S.Ct. at 1618 n. 6. There is an obvious difference between the surgery contemplated in *Winston* and the blood sampling sought here, a procedure which the Supreme Court itself has described as commonplace and routine. That presumption will hold unless a defendant can show that there is a particular risk which would arise in his individual case. Should either defendant believe that any unique medical condition, e.g., hemophilia, would necessitate an evidentiary hearing in his case, he should so state in his response to the Government's affidavits. Otherwise, the indictment and facts alleged in the affidavits, together with oral argument, should prove procedurally sufficient. Cf. *Commonwealth v. Trigones,* 397 Mass. 633, 492 N.E.2d 1146, 1151 (1986).

IT IS SO ORDERED.