In the Matter of a Grand Jury Investigation.

Suffolk. January 9, 1998. - April 10, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Grand Jury. Probable Cause. Constitutional Law,* Search and seizure. *Search and Seizure,* Blood sample, Probable cause. *Evidence,* Blood sample. *Due Process of Law,* Seizure of blood sample.

Discussion of State and Federal constitutional considerations surrounding the compelled taking of blood samples from an individual. [223-224]

This court concluded that, to meet the reasonableness requirement of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a grand jury seeking to obtain a blood sample from an individual must have a reasonable basis (probable cause) for believing that the sample will provide test results that will significantly aid the grand jury in their investigation of circumstances in which there is good reason to believe a crime has been committed. [224-226]

In the context of a grand jury investigation regarding a rape, the Superior Court erred in denying the Commonwealth's petition for orders directing the incompetent victim's father and brother to produce blood samples, where there was a reasonable expectation that the test results would strongly aid in determining the identity of the assailant. [226-227]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 17, 1997.

The case was heard by *O'Connor,* J.

*David F. Capeless,* Assistant District Attorney, for the Commonwealth.

*Robert J. Carnes* for the brother.

*Paul W. Cormier* for the father.

*Scott Harshbarger,* Attorney General, & *Pamela L. Hunt,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

WILKINS, C.J. A grand jury in Berkshire County is investigating the apparent rape of a twenty-one year old woman who is profoundly retarded and autistic. The woman, who lives with her parents and brother, cannot talk and requires twenty-four

hour supervision. In the fall of 1996, a physician determined that the woman was pregnant.[1] The woman is incapable of identifying the man who caused her pregnancy. Police investigation led to the reasonable belief that either the woman's father or her brother caused her pregnancy. A State trooper sought to obtain blood samples from each for comparison testing, but, on advice of counsel, each declined to cooperate.

In February, 1997, the State trooper testified before the grand jury, presenting the information that we have just summarized. The district attorney then petitioned, on behalf of the grand jury, for a court order directing the father and the brother each to submit to the taking of a sample of blood by trained laboratory personnel under the direction of the State police. The father and the brother, represented by separate counsel, opposed the petition. They relied on the prohibition of unreasonable searches and seizures stated in both the Federal and State Constitutions but on appeal make no claim that the two provisions call for different results. See *Commonwealth* v. *Downey*, 407 Mass. 472, 475 n.5 (1990).

A judge in the Superior Court held a hearing on the petition and denied it. Relying on this court's opinion in *Matter of Lavigne*, 418 Mass. 831 (1994), which concerned the right of the police to take a blood sample pursuant to a search warrant, the judge concluded that the Commonwealth must show that there is probable cause for believing that the person whose blood is sought committed the crime under investigation. Because, in his view, the Commonwealth failed to make such a showing, the judge declined to order the production of blood samples.

The Commonwealth next petitioned a single justice of this court, under G. L. c. 211, § 3, for relief from the order entered in the Superior Court. After a hearing, a single justice of this court denied relief without filing a memorandum of decision or otherwise stating why he did so.[2] The Commonwealth has appealed from the judgment denying relief. The only issue before us is whether the single justice erred in ruling that the Superior Court judge was correct in denying the Commonwealth's petition for orders to produce blood samples. Neither the father nor the brother argues that the single justice might have decided the case on any other ground or that we should do so.

[1] Pursuant to court order, the pregnancy was terminated on December 17, 1996, and fetal tissue was preserved that would permit genetic testing.

[2] The single justice had dissented in part in *Matter of Lavigne*, 418 Mass. 831, 839-840 (1994) (O'Connor, J., dissenting).

In *Schmerber* v. *California*, 384 U.S. 757, 769-771 (1966), the Court balanced the State's interest in obtaining evidence against the defendant's rights. It held that a defendant's constitutional right not to be subjected to unreasonable searches and seizures was not violated when, in exigent circumstances and with probable cause to believe that the defendant had operated a motor vehicle while intoxicated, a doctor on direction of a police officer drew blood from the defendant shortly after a motor vehicle accident. "Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain" (footnote omitted). *Id.* at 771. The Court emphasized that there was a clear indication that relevant evidence would be found because a blood test is an effective means of determining whether a person is intoxicated. *Id.* The absence of an adequate alternative means of proof bears on the intensity of the State's interest in obtaining the evidence and is a factor to be considered in the balancing test stated in the *Schmerber* opinion. See *Winston* v. *Lee*, 470 U.S. 753, 762-763 (1985). A more substantial bodily intrusion might require a different result, even if there were probable cause to believe that a defendant had committed a crime and the intrusion would produce relevant evidence, especially if the State's need for the evidence was not great. *Id.* at 766 (unreasonable search to compel defendant to submit to potentially dangerous surgery to remove bullet from defendant's chest for which State had not shown compelling need). Although the *Schmerber* and *Winston* opinions indicate that drawing blood is not by itself unreasonable, they tell us little about the standard to be applied when a request comes from a grand jury.

In certain circumstances, the police may seek blood samples, either before or after criminal charges have been brought, without violating any constitutional prohibition. See *Matter of Lavigne*, 418 Mass. 831, 835 (1994) (taking of blood of suspect, pursuant to preindictment search warrant, would not be unconstitutional search or seizure provided that there was probable cause to believe suspect committed a crime and his blood would aid in investigation of that crime); *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986) (postindictment, hence after finding of probable cause, order that defendant provide blood sample may properly issue on showing "that a sample of

the defendant's blood will probably produce evidence relevant to the question of the defendant's guilt"). The issue of significance in this case is what level of probability the Commonwealth must establish that the person from whom blood is sought committed the crime under grand jury investigation. Other considerations point to the allowance of the grand jury's request. The degree of bodily intrusion would be minimal. The evidence would be highly relevant on the issue of the father's and the brother's guilt or innocence. And there is no better source of evidence of such strength available to the grand jury.[3]

Our analysis of the claim of a constitutional violation is advanced only a little by stating that the Commonwealth must demonstrate probable cause. The more useful inquiry asks: of what must there be probable cause? In other areas requiring probable cause determinations, the answer varies depending on the circumstances. There is probable cause to arrest a suspect if "at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed . . . an offense" (*Commonwealth* v. *Sanna*, 424 Mass. 92, 99 n.11 [1997], quoting *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 [1992]), or, to put it another way, probable cause to arrest "requires more than mere suspicion but something less than evidence sufficient to warrant a conviction." *Commonwealth* v. *Roman*, 414 Mass. 642, 643 (1993), quoting *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982). There is probable cause to indict a suspect if there is "sufficient evidence to establish the identity of the accused, and probable cause to arrest him or her." *Commonwealth* v. *Caracciola*, 409 Mass. 648, 650 (1991). See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 9 (1995). The term imports a higher standard when a District Court judge at a probable cause hearing decides whether a criminal defendant should be held for trial. *Id.* at 8. Probable cause to hold a defendant for trial requires the Commonwealth to present evidence sufficient to warrant a conviction (the "directed verdict" rule). See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, *supra* at 8; *Myers* v. *Commonwealth*, 363 Mass. 843, 850 (1973).

Constitutional standards for the reasonableness of a search or

---

[3]The record does not show what tests are contemplated or, if DNA testing is planned, whether blood is a better source for testing than, for instance, hair or saliva.

seizure based on a warrant require that there be "a fair probability that contraband or evidence of a crime will be found in a particular place" (*Illinois* v. *Gates*, 462 U.S. 213, 238 [1983]), or that the issuing magistrate have "a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched" (*Commonwealth* v. *Upton*, 394 Mass. 363, 370 [1985]). See *Commonwealth* v. *Neilson*, 423 Mass. 75, 77 n.3 (1996). This probability standard does not mean that it must appear more likely than not that the items are in a particular place to be searched. See *Illinois* v. *Gates, supra* at 235. And there is no requirement at all that the person to whom a search warrant is directed should himself even be suspected of crime, much less that there be probable cause to believe him guilty.

As long as we define a standard for the production of blood samples that meets the requirement of reasonableness of the Fourth Amendment to the United States Constitution and of art. 14 of the Massachusetts Declaration of Rights, the label of probable cause need not be used. A standard that requires that a grand jury request must be reasonable in light of the facts seems appropriate. Given that a grand jury must find probable cause to indict, it would be peculiar to require them to demonstrate the same degree of probable cause to believe that a target of their investigation committed a crime before the grand jury could properly obtain evidence in aid of their investigation. See *United States* v. *R. Enters., Inc.*, 498 U.S. 292, 297 (1991) ("A grand jury subpoena is thus much different from a subpoena issued in the context of a prospective criminal trial . . . . [T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists"); *id.* at 306 (Stevens, J., concurring); *Henry* v. *Ryan*, 775 F. Supp. 247, 255 (N.D. Ill. 1991). But see *Woolverton* v. *Multi-County Grand Jury Okla. County*, 859 P.2d 1112, 1115 (Okla. Crim. App. 1993). It would obviously frustrate this grand jury's inquiry to require them to demonstrate that it is more probable than not that one or the other of the men from whom blood is sought committed the crime. We think that the constitutional requirement that searches and seizures be reasonable does not compel the application of such a high standard when a grand jury are involved.

The grand jury uniquely "is a grand inquest, a body with

powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. . . . [T]he identity of the offender, and the precise nature of the offense . . . normally are developed at the conclusion of the grand jury's labors, not at the beginning." *United States* v. *Dionisio*, 410 U.S. 1, 13 n.12 (1973), and cases cited. The Court has noted that "[t]he grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. . . . The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States* v. *R. Enters., Inc.*, *supra* at 297. A grand jury's investigative power is necessarily broad. See *United States* v. *Calandra*, 414 U.S. 338, 344 (1974); *United States* v. *Dionisio*, *supra* at 15. It is, however, not unlimited.

A grand jury must have a reasonable basis for believing (have probable cause for believing, if you wish) that a blood sample will provide test results that will significantly aid (in this case perhaps indispensably aid) the grand jury in their investigation of circumstances in which there is good reason to believe a crime had been committed. Cf. *Commonwealth* v. *Doe*, 408 Mass. 764, 769 (1990) (order to appear at police lineup supported by reasonable suspicion that person committed crime under grand jury investigation). In this case, an additional demonstration supports the issuance of orders for blood samples. There is reason to believe (it may even be more likely than not) that either the father or the brother caused the pregnancy. Proper testing certainly will exclude one, and could exclude both, from the grand jury's continuing interest. The test results, no matter what they are, will be a significant aid in the grand jury's inquiry. The reasonable expectation is that the test results will strongly point to, but not conclusively prove, the guilt of the man who caused the pregnancy. See *Commonwealth* v. *Beausoleil*, 397 Mass. 206, 217-218 (1986).[4]

The case is remanded to the single justice with instructions

---

[4]There is no reason to require that the issue in this case be presented by an application for, and enforcement of, a search warrant. The issue of obtaining blood samples for a grand jury can properly be raised as was done in this

that an order shall be issued in the Superior Court directing the father and the brother each to submit to the taking of a blood sample by trained laboratory personnel under the supervision of the State police.

*So ordered.*

---

case. Such a process provides greater protection to an individual's interests than would the issuance of a search warrant in an ex parte proceeding before a judge. *Commonwealth* v. *Trigones*, 397 Mass. 633, 641 (1986). Thus, we disagree with the contrary view expressed in *In re Grand Jury Proceedings (T.S.)*, 816 F. Supp. 1196, 1205 (W.D. Ky. 1993).