Borenstein, J.
This matter comes before the Court on plaintiffs’, Donald E. Landry, et al. (“plaintiffs”), second motion for preliminary injunction. Plaintiffs have moved to enjoin the defendants, Scott Harshbarger, Attorney General, et al. (“defendants”), from enforcing the DNA Seizure and Dissemination Act, M.G.L.c. 22E, §§1-15, (“Act”). Plaintiffs also seek a declaration that the Act violates the plaintiffs’ constitutional rights on the grounds that the involuntary extraction of blood, with or without the use of force, without individualized suspicion or probable cause is incompatible with individual privacy rights guaranteed by art. 14 of the Massachusetts Declaration of Rights and the Fourth and Fourteenth Amendments to the United States Constitution. In their opposition, in support of the Act’s constitutionality, defendants urge this Court to depart from clearly established Fourth Amendment and art. 14 jurisprudence and create new law. For the Court to accept defendants’ position, it would be adopting a new interpretation of firmly established jurisprudence. This Court will not adopt this new and novel approach. Rather, this Court finds and declares that M.G.L.c. 22E, §§1-15 violates the Fourth Amendment to the United States Constitution; independent of and apart from the Fourth Amendment, these provisions also violate art. 14 of the Declaration of Rights. For the reasons set forth below, plaintiffs’ second motion for preliminary injunction is ALLOWED.
I. BACKGROUND
On September 30, 1997, the Massachusetts Legislature enacted the DNA Seizure and Dissemination Act, M.G.L.c. 22E, §§1-15. According to 1997 Mass. Acts c. 106, §1, the purpose of the Act is to assist local, state, and federal criminal justice and law enforcement agencies in: (1) deterring and discovering crimes and recidivistic criminal activity; (2) identifying indi *75 viduals for, and excluding individuals from criminal investigation or prosecution; and (3) searching for missing persons.
Pursuant to Section 3 of the Act, any person convicted of one of the thirty-three (33) enumerated statutory offenses[3] or of an attempt or a conspiracy to commit any of the aforementioned offenses shall be required to submit a DNA sample within ninety (90) days of such conviction. According to 1997 Mass. Acts c. 106, §8, on the effective date of the Act, December 29, 1997, notwithstanding the date of conviction, any person incarcerated in any prison or house of correction for any of the enumerated offenses, or any person on probation or parole as a result of any of the enumerated offenses, shall submit to a DNA sample within ninety (90) days, or prior to their release from custody, whichever date occurs first.
According to Section 3 of the Act, each DNA sample shall be collected by an authorized person, in accordance with regulations or procedures established by the director. Section 6 of the Act, further specifies that the director shall promulgate regulations governing the collection, submission, receipt, identification, storage, and disposal of DNA samples. The results of all DNA analyses shall become part of the state DNA database.
In the event that an individual refuses to submit to a DNA sample, Section 4 allows authorized law enforcement and correction personnel to use reasonable force to assist in collecting DNA samples. Additionally, Section 11 permits the imposition of a fine of not more than $1,000, or imprisonment in a jail or house of correction for not more than six months, or both for anyone who refuses to provide a DNA sample.
In January of 1998, defendants and their agents began to enforce the Act, without promulgating regulations, in violation of the Act’s requirements. Between January 15 and January 22, 1998, plaintiffs Cartagena, Troisi, and Pistorino received notices from the Department of Probation informing them of their duly to provide a DNA sample within ninety (90) days of their convictions. The notices threatened that failure to comply was punishable by a fine, incarceration, or both, and was grounds for the revocation of their probation. On January 26, 1998, Landry received a similar notice stating that he must submit to a DNA sample by March 29, 1998. All probationers and parolees were instructed to contact 1-888-877-4DNA for further instructions and information.
On January 24, 1998, prior to the promulgation of any regulations, agents of the defendants compelled more than 1,100 prison inmates, convicted of one or more of the enumerated offenses, to submit to the extraction of their DNA, including plaintiffs Gallello, Hallett, and Pironti. When necessary, defendants used physical force, threat of force, or threat of punishment to involuntarily obtain DNA samples from the prison inmates.
Beginning on February 4, 1998, agents of defendants began extracting DNA samples from probationers and parolees at the Massachusetts National Guard Armory in Dorchester (Armory). Probationers and parolees who received notice and telephoned 1-888-877-4DNA were instructed, under threat of punishment, to report to the Armory to submit a DNA sample.
II. PROCEDURAL HISTORY
On February 5, 1998, at a hearing before this Court, plaintiffs argued a Motion for Preliminary Injunction in an effort to enjoin the defendants from seizing the DNA of Cartagena, Landry, Troisi, and Pistorino, to enjoin any testing of the DNA samples previously seized from Pironti, Hallett, and Gallello, and to order that any seized DNA b e destroyed. By agreement of all parties, the only issue raised and argued on February 5 was the defendants’ failure to promulgate regulations prior to enforcement of the Act, in violation of Sections 6 and 8 of M.G.L.c. 22E. This Court granted plaintiffs’ motion on February 9 and ordered defendants to cease any and all collection, analysis, and/or dissemination of DNA of the plaintiffs, and of anyone subject to the provisions of the Act.
On February 17, 1998, plaintiffs filed an amended verified complaint in this Court seeking temporary and permanent injunctive and declaratory relief.[4] Plaintiffs are seeking to permanently bar the defendants from seizing the DNA of Cartagena, Landry, Troisi, and Pistorino, and from analyzing and disseminating the DNA samples previously seized from Pironti, Hallett, and Gallello. Plaintiffs are also seeking a declaration that defendants’ actions violate the constitutional rights of the plaintiffs.
On February 27, 1998, after promulgating emergency regulations governing just the collection of DNA samples, defendants filed an Emergency Motion to Partially Vacate the Preliminary Injunction entered on February 9, 1998 and allow them to resume collecting DNA samples. On March 18, 1998, after a hearing before me, I denied defendants’ emergency motion on the grounds that further arguments and/or regulations regarding the use of force were desired. These issues were scheduled to be addressed at oral arguments on April 15, 1998.
On March 26, 1998, a single justice of the Massachusetts Appeals Court modified the preliminary injunction issued on February 9 and reaffirmed on March 18. Justice Kenneth Laurence of the Massachusetts Appeals Court granted defendants’ motion to vacate that portion of the injunction barring the collection of DNA samples. Defendants are currently permitted to notify any and all persons subject to the Act of their duty to provide a DNA sample and to inform such persons that the refusal to do so shall be subject to the penalties of fine and term of imprisonment set forth in Section 11 of the Act. Defendants are further permitted to collect DNA samples. However, in the event that any person should unequivocally and *76 clearly, in writing, refuse to provide a DNA sample, defendants shall not use physical force of any nature to obtain a DNA sample.
On April 22, 1998, all parties appeared before this Court for oral arguments. By agreement, the parties’ arguments concentrated on the merits of Count II of plaintiffs’ amended complaint, the constitutionality of the Act with respect to art. 14 of the Massachusetts Declaration of Rights and the Fourth and Fourteenth Amendments to the United States Constitution. This is the issue currently before this Court, and arguments on plaintiffs’ other Counts have been reserved for a later date.
III. STANDARD OF REVIEW
In determining whether to grant a preliminary injunction, this Court considers the balancing test set forth in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). First, the Court must evaluate, in combination, “the moving party’s claim of injury and its chance of success on the merits.” Cheney, 609 Mass. at 617. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, this Court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. “In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity.” Id. at 617 n. 11. Moreover, in appropriate cases the Court should also consider the risk of harm to the public interest. GTE Prods. Corp. v. Stewart, 414 Mass. 721, 723 (1993). See also Commonwealth v. Massachusetts, CRINC., 392 Mass. 79, 89 (1984); Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988). Finally, a preliminary injunction is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Charles Wright & Arthur Miller, 11 Federal Practice & Procedure, §2948, at 129-30 (1995).
Mass.R.Civ.P. 65(b)(2) permits a hearing on an application for a preliminary injunction to be consolidated with a trial on the merits. A consolidated hearing and trial should be conducted in circumstances that can produce a clear indication of the factual basis for the judge’s decision. Metropolitan Dist. Comm’n v. Codex Corp., 395 Mass. 522, 524-25 (1985). Moreover, in order for the granting or denial of preliminary injunctive relief to be outcome-determinative, there must exist the necessity of a prompt judgment rather than a preliminary injunction. Carabetta Enters., Inc. v. Schena, 25 Mass.App.Ct. 389, 391-92, n.1 (1988). The showing of exigency must be compelling to justify giving the case preference over others already awaiting trial. Id.
IV. DISCUSSION
A. The Fourth Amendment to the United States Constitution
The Fourth Amendment to the United States Constitution expressly provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...” Fourth Amendment jurisprudence has consistently recognized and protected, “ ‘expectations of privacy,’ see Katz v. United States, 389 U.S. 347 (1967) — the individual’s legitimate expectations that in certain places and at certain times he has ‘the right to be let alone — the most comprehensive of rights and the right most valued by civilized men.’ ” Winston v. Lee, 470 U.S. 753, 758 (1985) (citing Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)).
The initial question to address under a Fourth Amendment analysis is whether the government’s conduct constitutes a search and/or a seizure. The United States Supreme Court has consistently held that a seizure occurs when the government, in seeking to obtain evidence from an individual, meaningfully interferes with that individual’s “freedom of movement.” Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 616 (1989) (citing INS v. Delgado, 466 U.S. 210, 215 (1984); United States v. Jacobsen, 466 U.S. 109, 113, n.5 (1984)). Correspondingly, obtaining and examining evidence from an individual constitutes a search “if doing so infringes an expectation of privacy that society is prepared to recognize as reasonable.” Id. (citing California v. Greenwood, 486 U.S. 35, 43 (1988); Jacobsen, 466 U.S. at 113). In the present case, this Court finds that the involuntary taking of a person’s blood, to obtain a DNA sample, clearly constitutes a search that triggers the protections of the Fourth Amendment.
The United States Supreme Court previously considered precisely the same issue and concluded that “[blood] testing procedures plainly constitute searches of ‘persons,’ and depend antecedently upon seizures of ‘persons,’ within the meaning of that Amendment.” Schmerber v. California, 384 U.S. 757, 767 (1966) (involuntary blood test taken at hospital, after an automobile accident, to determine whether the arrested suspect was under the influence of alcohol). Moreover, defendants do not dispute such findings, as they conceded, at oral argument and in their opposition, that their procedures constitute a Fourth Amendment search.
Once a search and/or seizure has triggered Fourth Amendment protections, a determination must be made as to the reasonableness of the government’s search. “The Fourth Amendment’s proper function is to constrain, not against all intrusions [into the body for blood], but against intrusions which are not justified in the circumstances, or which are made in an improper manner.” Id. at 768.
*77 In Winston v. Lee, 470 U.S. 753, 760 (1985) (attempt to compel a charged suspect to undergo a surgical procedure to remove a bullet from his collarbone), the United States Supreme Court reaffirmed the test for reasonableness set forth in Schmerber and “noted the importance of probable cause” as a threshold requirement. The Court reemphasized that “(sjearch warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned ..." Winston, 470 U.S. at 761 (emphasis added) (quoting Schmerber, 384 U.S. at 770). “In the absence of a clear indication that in fact such evidence will be found . . . fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.” Schmerber, 384 U.S. at 769 (emphasis added). Without meeting the threshold requirement of probable cause, there cannot be a bodily intrusion.
Apart from this initial inquiry, the Schmerber Court also applied a balancing test to determine the reasonableness of the procedure employed. The Court considered both the circumstances surrounding the procedure (i.e. where the procedure was performed, who performed the procedure, and the procedural method utilized) and the “extent of intrusion upon the individual’s dignitary interests in personal privacy and bodily integrity." See Winston, 470 U.S. at 761; see also Schmerber, 384 U. S. at 771. On the other hand, the Court “weighed against these individual interests . . . the community’s interest in fairly and accurately determining guilt or innocence.” Winston, 470 U.S. at 762.
In Schmerber, after determining that probable cause existed, the. Court held the procedure employed was not unduly burdensome on the defendant, given that the procedure was performed by a physician, in a hospital environment, and in accordance with accepted medical practices. The Court further noted that “blood test procedure^ have] become routine in our everyday life.” Schmerber, 384 U.S. at 770, n.13. In Winston, the Court did not allow the surgical procedure on the grounds that “the intrusion on respondent’s privacy interest entailed by the operation can only be characterized as severe.” 470 U.S. at 767. Again, however, for the purposes of the present case, it is essential to note that in both Schmerber and Winston, it was undisputed that the police had probable cause to believe the defendant had committed a crime and to believe that the bodily intrusion “would provide evidence that was exceptionally probative in confirming this belief.” Winston, 470 U.S. at 759 (citing Schmerber, 384 U.S. at 368, 770) (emphasis added). The Court’s determination as to the reasonableness of each search was made only after the initial requirement of probable cause was satisfied.
In the case before me, it is undisputed that the Act does not require a preliminary determination of individualized probable cause or reasonable suspicion of criminal activity prior to the forced taking of blood from any person subjected to the provisions of the Act. The Act provides for a random, suspicionless bodily intrusion to obtain a blood sample from any person convicted of one or more of the 33 enumerated criminal offenses. Additionally, defendants do not dispute that probable cause is ordinarily required to permit a bodily intrusion to obtain evidence. The defendants, however, insist that those requirements do not apply to the Massachusetts statute before me. Defendants rely on Michigan Dep’t of State Police v. Sitz, 496 U.S. 444, 448-50 (1990) (highway sobriety checkpoint was held consistent with the Fourth Amendment); Skinner, 489 U.S. at 634 (permitting drug and alcohol tests for railway employees involved in train accidents and for those who violate particular safety rules); and National Treasury Employee Union v. Von Raab, 489 U.S. 656, 677 (1989) (permitting drug tests for United States Customs Service employees who seek transfer or promotion to certain positions), to assert that no individualized suspicion is required when the intrusion is minimal and is justified by important governmental interests, generally when the government determines that requiring individualized suspicion would defeat a legitimate law enforcement purpose. Defendants suggest that under such limited circumstances, this court need only consider the state’s interest in conducting the suspicionless search, the effectiveness of the method chosen to carry out the search, and the level of intrusion on the individual’s privacy.
Defendants’ assertions are inconsistent with Fourth Amendment jurisprudence. The United States Supreme Court has never held that a bodily intrusion can occur without at least individualized suspicion, if not probable cause, of criminal activity and a clear indication that such intrusion will provide probative evidence connecting the defendant to said activity. In fact, the United States Supreme Court has uniformly held that the Fourth Amendment “generally bars officials from undertaking a search or seizure absent [some form of] individualized suspicion.” Chandler v. Miller, 117 S.Ct. 1295, 1298 (1997) (holding that mandatory drug testing of candidates for state office did not fit within the closely guarded category of constitutionally permissible suspicionless searches).
If this Court were to follow the arguments of the defendants and eliminate the Fourth Amendment’s threshold requirement of probable cause, this Court would need to change the existing laws governing Fourth Amendment jurisprudence, and would thereby not only exceed its authority, but adopt a rule that is new, extensive and unjustified under any analysis of constitutional doctrine. Naturally, as there is “no justification for this unprecedented departure from settled Fourth Amendment jurisprudence," the Court is unwilling to take such a position. Rise v. State of *78 Oregon, 59 F.3d 1556, 1564 (9th Cir. 1995) (Nelson, J., dissenting), cert. denied, 116 S.Ct. 1554 (1996).
Moreover, defendants’ reliance on Site is misplaced. In Site, the United States Supreme Court considered the extent of the intrusion, both subjective and objective, in stopping motorists at a predetermined sobriety checkpoint for approximately twenty-five seconds, in order to determine whether further sobriety testing was warranted. Sitz, 496 U.S. at 448-49. The Court then balanced this intrusion with the state’s interest in preventing drunk driving accidents and the effectiveness of the checkpoints in achieving the state’s interest. Id.
The focal point of the Court’s decision in Site, in upholding the constitutionality of the sobriety checkpoint, was the minuscule intrusion in detaining a person in their motor vehicle for less than thirty seconds to ask a few questions, coupled with the important state interest in reducing drunk driving accidents. Despite defendants’ assertions, twenty-five seconds of questioning cannot be compared to the situation currently before me. The involuntary taking of a blood sample from a person’s body requires a bodily intrusion through the use of force, punishment, and/or threat of force or punishment. Consistent with Fourth Amendment jurisprudence, a bodily intrusion, with or without the use of force, can only be considered reasonable if probable cause exists to believe the person in question participated in a criminal activity for which a blood sample is relevant evidence. “Because ‘[t]he integrity of an individual’s person is a cherished value in our society,’ searches that invade bodily integrity cannot be executed as mere fishing expeditions to acquire useful evidence.” Rise, 59 F.3d at 1564 (Nelson, J., dissenting).
Finally, in response to defendants’ insistence that individualized suspicion is not required to involuntarily extract a blood sample for the purposes of the DNA data bank, plaintiffs refer the Court to Skinner, Von Raab, and Chandler. This line of cases deals with random drug testing conducted without any form of individualized suspicion and utilize the exact same balancing test set forth in Site. According to the Supreme Court, “particularized exceptions to the main rule, [requiring individualized suspicion of wrongdoing], are sometimes warranted based on ‘special needs,’ beyond the normal need for law enforcement.” Chandler, 117 S.Ct. at 1301 (citing Skinner, 489 U.S. at 619) (emphasis added). When a court determines that a special need exists, “[a] concerní] other than crime detection,” individualized suspicion is not required and the analyzing court need only weigh “the competing private and public interests advanced by the parties." Chandler, 117 S.Ct. at 1301 (citing Von Raab, 489 U.S. at 665-66) (emphasis added).
Defendants agree with plaintiffs’ interpretation of the Skinner line of cases, in that a special needs exception would have to exist. However, defendants dispute the requirement that the special need advanced by the government must be beyond the normal need for law enforcement. According to defendants, individualized suspicion is not necessary where an important governmental interest exists and the government demonstrates that such interest would be placed in jeopardy by a requirement of particularized suspicion. See Skinner, 489 U.S. at 624. Here, the unquestioned special need is law enforcement/crime solving.
This Court finds defendants’ interpretation not only too lax, but not consistent with the Supreme Court’s holding. The Supreme Court did not intend to permit random suspicionless searches for the sole reason that it would be impractical for the government to require individualized suspicion. “[T]he mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment.” Mincey v. Arizona, 437 U.S. 385, 393 (1978).
In Skinner, 489 U.S. at 634, 619, the Court concluded that the “surpassing safety interests” in preventing accidents warranted the blood testing of employees involved in train accidents and the urine and breath testing of persons violating safety procedures because safety is a “special need beyond the normal need for law enforcement.” Similarly, in Von Raab, 489 U.S. at 664-65, the Court permitted drug testing of U.S. Customs employees required to carry a firearm or directly involved with drug interdiction. Again, the Supreme Court’s decision relied on the special circumstances involved and noted society’s safety concerns beyond mere law enforcement. Most recently, in Chandler, 117 S.Ct. 1295 (1997), the United States Supreme Court analyzed the constitutionality of a state statute permitting random drug testing. This time, the Court held unconstitutional a Georgia statute requiring candidates for state office to pass a drug test. In so holding, the Court indicated that the statute did not constitute a special need, as the government “offered no reason why ordinary law enforcement methods would not suffice to apprehend such addicted individuals, should they appear in the limelight of a public stage." Id. at 1304. The Court further cautioned that Von Raab is “[hjardly a decision opening broad vistas for suspicionless searches . . . [and] must be read in its unique context.” Id.
Defendants further assert that, even if the special need exception must be a need beyond the normal need for law enforcement, the Act fulfills such a requirement. This Court does not agree. In order to satisfy the special need exception, the government must set forth an important governmental interest beyond the normal need for law enforcement; one that surpasses mere crime detection. See Skinner, 489 U.S. at 619; Chandler, 117 S.Ct. at 1301; and Von Raab, 489 U.S. at 665-66. The Act does not satisfy such requirements, as the purpose for the Act, according to 1997 Mass. Acts c. 106 §1, is to assist local, state, and *79 federal criminal justice and law enforcement agencies in: (1) deterring and discovering crimes and recidivistic criminal activity; (2) identifying individuals for, and excluding individuals from criminal investigation or prosecution; and (3) searching for missing persons. The very reasons given by the Act: deterrence, investigation, prosecution, and finding missing persons are all considered normal law enforcement and/or mere crime detection. These objectives do not warrant a special need exception to the Fourth Amendment’s requirement of individualized suspicion. “The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.” Mapp v. Ohio, 367 U.S. 643, 648 (1961) (citing Weeks v. United States, 232 U.S. 383 (1914)).
B. Article 14 of the Massachusetts Declaration of Rights
Art. 14 of the Massachusetts Declaration of Rights states in pertinent part, “Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions.” Plaintiffs argue that the DNA Seizure and Dissemination Act violates the aforementioned portion of art. 14 in that it permits an unreasonable suspicionless search and/or seizure. Defendants maintain that the Act does not violate the Massachusetts Declaration of Rights, as it fits into one of the limited exceptions to art. 14’s requirement of probable cause, and thus, does not constitute an unreasonable search and/or seizure.
As a preliminary matter, defendants have correctly asserted that, under ordinary circumstances, actions by administrative agencies, i.e., the promulgation of regulations, and statutes enacted by legislative bodies are presumed to be constitutional. Defendants, however, are incorrect in stating that the analysis usually employed controls the-current situation. Massachusetts law has clearly established that “where a fundamental right is at issue, the State must show that the statute is necessary to promote a compelling governmental interest.” Commonwealth v. Henry's Drywall Co., 366 Mass. 539, 542 (1974) (citing Sherbert v. Verner, 374 U.S. 398, 402-09 (1963); Shapiro v. Thompson, 394 U.S. 618, 634 (1969)). Moreover, “in certain circumstances, arguably involving constitutionally protected liberties, [the Supreme Judicial Court (“SJC") has] required that the asserted governmental interests be sufficient to outweigh exercise of the individual right.” Id. (citing Selectmen of Framingham v. Civil Serv. Comm’n., 366 Mass. 547 (1974)) (emphasis added).
In the case now before me, it is undisputed that M.G.L.c. 22E §§1-15, requiring the taking of a DNA sample from persons convicted of one of the enumerated criminal offenses, involves a constitutionally protected liberty interest. Thus, in analyzing the constitutionality of the statute, and the regulations promulgated thereunder, this Court must apply a strict scrutiny analysis. The State shall bear the burden of demonstrating, at least, that the statute is necessary to promote a compelling state interest, and, at most, the existence of a state interest sufficient to outweigh a person’s individual right, i.e., a person’s right to be let alone. Although defendants declare that the interests asserted by the state, to solve unsolved crimes and to find missing persons, are compelling enough to dispense with the protections of art. 14 and permit random suspicionless DNA testing, this Court does not agree.[5]
The constitutional analysis under art. 14 of the Massachusetts Declaration of Rights is similar to that of the Fourth Amendment to the United States Constitution, albeit more definitive.
Massachusetts case law clearly recognizes that “an order compelling one to give a blood sample is a search and seizure under the Fourth Amendment.” Commonwealth v. Trigones, 397 Mass. 633, 640 (1986) (citing Schmerber, 384 U.S. at 767). See also Commonwealth v. Downey, 407 Mass. 472, 476 (1990). Once again, it is not disputed by either party that the involuntary extraction of a person’s blood triggers the protections of art. 14 of the Massachusetts Declaration of Rights, as well as the Fourth Amendment to the United States Constitution.
Additionally, it is equally as clear in Massachusetts that in order to compel a person to submit to a blood sample, “there must exist probable cause for believing that the person whose blood the Commonwealth seeks has committed the crime” for which he or she is being investigated. Matter of Lavigne, 418 Mass. 831, 835 (1994). Moreover, “the [suspected] person is entitled to a hearing from which the judge must make findings as to the degree of intrusion and the need for the evidence of the blood sample.” Id. (citing Schmerber, 384 U.S. at 771). Consistent with their holding in Lavigne, the SJC has never permitted a bodily intrusion without some form of individualized suspicion.
The SJC first addressed the issue of random suspicionless searches in the context of sobriety checkpoints, the end result being a determination similar to that elucidated by the United States Supreme Court five years later in Sitz. In Commonwealth v. Trumble, 396 Mass. 81, 91 (1985), the SJC upheld the use of roadblocks to deter and detect drunk drivers. In so holding, the SJC relied on the clear demonstration that drunk drivers presented a substantial danger on the highways of Massachusetts, combined with the precise guidelines set forth and the minimal inconvenience to motorists involved. Id. at 86-87.
In Guiney v. Police Commissioner of Boston, 411 Mass. 328 (1991), the SJC again considered the constitutionality of random suspicionless searches, this time in the context of the random urine testing of *80 Boston Police officers. The SJC held that the random drug testing of police officers violated art. 14 of the Massachusetts Declaration of Rights, as there was no indication of a drug problem in the Boston Police Department; the Commissioner’s argument that drug testing would deter drug use by police cadets was merely speculative. Comparing Guiney with the Court’s earlier cases involving sobriety checkpoints, the SJC noted that
Although the stopping of a motorist’s vehicle at a roadblock is a seizure for constitutional purposes, intrusion of a roadblock on a motorist’s privacy is fleeting and certainly does not involve the random taking of bodily fluids. This court has never approved the nonconsensual [sic] taking of blood or urine of a person in the absence of a demonstrated, particularized basis for doing so.
Id. at 332 (citations omitted) (emphasis added). In rejecting the majority opinion in Von Raab, the SJC further indicated that “ [i]f such an intrusive testing process could ever be justified as reasonable [under] art. 14 the government would have to make a strong factual showing that a substantial public need exists for the imposition of such a process" and that the government’s need “will be well served by imposing random urinalysis on unconsenting citizens.” Id. at 330, 333 (emphasis added) (citing Von Raab, 489 U.S. at 675, n.3).
Defendants suggest that the current situation illustrates an example of the substantial public need referred to in Guiney and, therefore, justifies the random suspicionless search permitted by the Act. On this point, the defendants are incorrect. It is true that the State has set forth a compelling public interest, to solve and deter criminal activity, however, this interest is not sufficient to outweigh the fundamental right protected by art. 14 of the Massachusetts Declaration of Rights, the right to be let alone. See Olmstead, 277 U.S. 438, 478 (1928) (Brandéis, J., dissenting).
In Guiney, the SJC acknowledged that compelling interests may exist that warrant random suspicionless searches, i.e., sobriety checkpoints, however, the court went out of its way to distinguish such circumstances from those involving bodily intrusions. The more intrusive a procedure, the more protection art. 14 affords. To reiterate, in the court’s own words, “this court has never approved the nonconsensual [sic] taking of blood or urine of a person in the absence of a demonstrated,' particularized basis for doing so.” Guiney, 411 Mass. at 332 (citations omitted) (emphasis added). With that said, this Court is unwilling to depart from the SJC’s well established constitutional principles and turn art. 14 on its head. Regardless of the State’s compelling interest, an unjustified random bodily intrusion without any indication of individualized suspicion is unreasonable and intolerable.
Defendants further point to Skinner, 489 U.S. at 625; Winston, 470 U.S. at 762; and In the Matter of a Grand Jury Investigation, No. 07477, slip op. at 2, 5 (Mass. Apr. 10,1998), forthe proposition that blood tests are considered to be only a minimal bodily intrusion. Defendants reliance on these cases is misplaced. In each of these situations, reference was made to the minimal intrusion involved in extracting a blood sample, in light of the fact that probable cause existed to compel a blood sample to begin with. The reasonableness of the blood testing procedure employed as the result of individualized suspicion has no bearing on the current situation. Where there is no individualized suspicion, the compelled taking of blood by any means is- unreasonable, therefore, unconstitutional.
Similarly, defendants’ reliance on Hudson v. Palmer, 468 U.S. 517, 530 (1984) (convicted prisoners not protected from routine searches of body cavities and jail cells); Bell v. Wolfish, 441 U.S. 520, 558-60 (1979) (permitting visual body cavity search of inmate for weapons and/or contraband); and Langton v. Commissioner of Corrections, 404 Mass. 165, 167-68 (1989) (strip searches of inmates do not offend Fourth Amendment), is also misplaced. In each of these situations, random suspicionless searches are permitted on the grounds that a special need beyond the need for normal law enforcement exists, i.e., “to ensure the security of the institution and the safety of inmates and all others within its boundaries.” Hudson, 468 U.S. at 529. The expansive scope of the Act, compelling blood tests from inmates, probationers, and parolees, is not analogous to a narrow prison setting. Moreover, defendants have not asserted a special governmental need worthy of dispensing with the constitutional rights enjoyed by such a vast group of persons.
Finally, concerning plaintiffs’ assertions that the Act is overbroad and will likely be arbitrarily and/or discriminatorily enforced, this Court takes judicial notice of another judicial challenge to the Act currently pending in Middlesex Superior Court. See Miller v. Norton, 353 Mass. 395, 399 (1967) (judge may regard himself as having knowledge of the entries upon the dockets of the court in which he sits). Civil Action No. 97-06600 involves a person (“Murphy”) convicted of one of the criminal offenses enumerated in the DNA Seizure and Dissemination Act. According to the pleadings, Murphy was convicted of one of the enumerated offenses in 1985 and is no longer incarcerated, on parole, or on probation for said offense.*
Murphy is currently incarcerated for nonviolent criminal offenses not included in the Act. Nonetheless, state officials seek to compel Murphy to submit a blood sample for the state DNA database as a result of his prior conviction, even though he was discharged from that sentence in 1993, and from a plain reading of the statute is not subject to its jurisdiction. Although this Court does not determine the outcome of Murphy’s situation at this time, it is important to note the expansive interpretation defendants are advocating in order to enforce the Act. In spite of the fact that the *81 Act unmistakably provides that DNA shall be taken only from persons incarcerated, on parole, or on probation for one or more of the enumerated offenses, defendants- — as evidenced by the requirements imposed on Murphy — seek to include persons that clearly do not fall within the aforementioned categories, thus, exhibiting their disregard for their own regulations. See 1997 Mass. Acts c. 106 §8.-By their own actions, and their arguments in Murphy, the Commonwealth seeks an expansive view of the statute and its execution. This approach only serves to aggravate the dangers built into this statute.
As stated previously, in order for a statute concerning fundamental rights to withstand a constitutional challenge, the statute must survive a strict scrutiny test in which the State must demonstrate that the statute or regulations are narrowly tailored to achieve the compelling state interest. This Court is not convinced that the State has met this burden. See Henry’s Drywall Co., 366 Mass. at 541. The statute in question incorporates nonviolent crimes for which DNA evidence is generally not helpful and for which the recidivism rates are not significant. The regulations permit coercion, use of force, as well as monetary and prison punishments for the failure to consent to the taking of a blood sample. Furthermore, the record demonstrates that enforcement of the Act has been quite arbitrary, as defendants’ own regulations have been disregarded on a number of occasions and persons not subject to the Act have received notice of their requirement to submit a blood sample.
Although defendants have asserted a compelling state interest, under no interpretation can this statute or the regulations thereunder be considered narrowly tailored and warrant such an infringement of the fundamental rights protected by art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution. There is no precedent for defendants’ requested departure from settled constitutional Jurisprudence, therefore, the government is asking this Court to take a position it simply cannot, and will not, take.
V. CONCLUSION
After extensive review of Fourth and Fourteenth Amendment jurisprudence and art. 14 of the Massachusetts Declaration of Rights, I find that the Act and its regulations do not withstand constitutional muster. Compelling persons to submit to invasive searches without particularized suspicion violates both the state and federal constitutions. I find and declare that the involuntary extraction of bíood from the plaintiffs, pursuant to §§1-15 of the Act is unconstitutional under the Fourth Amendment to the United States Constitution, independent and apart from the Fourth Amendment, these provisions also violate art. 14 of the Declaration of Rights. Accordingly, defendants are enjoined from invoking the provisions of M.G.L.c. 22E, §§1-15 to obtain DNA samples.
ORDER
For the reasons set forth above, it is hereby ordered that plaintiffs’ second motion for preliminary injunction, be ALLOWED. Pending further Court order, the defendants are hereby enjoined from enforcing the DNA Seizure and Dissemination Act. The defendants will not participate in the collection, analysis, and/or dissemination of DNA of the plaintiffs or of anyone subject to the provisions of the Act. DNA samples already in the possession of the Director of the .State Crime Laboratory shall remain sealed, impounded, segregated, and separately stored pending further notice by the Court.

The Act applies to the following thirty-three statutory criminal offenses: murder, manslaughter, indecent assault and battery on a mentally retarded person, indecent assault and battery on a person over 14, mayhem, assault with intent to murder, attempt to murder by poisoning, armed robbery, armed assault with intent to rob, armed assault in a dwelling, use of a firearm during commission of a felony, home invasion,.rape, rape of a child under 16, statutory rape, assault with intent to rape, assault with intent to rape a child under 16, kidnaping, armed burglary in the nighttime with intent to commit a felony, unarmed burglary in the nighttime, abduction for the purpose of prostitution, administering drugs with intent to rape, inducing a minor to become a prostitute, deriving support from child prostitution, open and gross lewdness, incest, dissemination of obscenity, solicitation of child pornography, dissemination of child pornography, unnatural and lascivious acts, unnatural and lascivious acts with a child under 16, and prostitution.

Count I of plaintiffs’ complaint alleges an unreasonable invasion of bodily integrity and personal privacy in violation of articles 1, 10, and 12 of the Massachusetts Declaration of Rights and the Ninth and Fourteenth Amendments to the United States Constitution. Count II alleges an unreasonable search and seizure in violation of article 14 of the Massachusetts Declaration of Rights and the Fourth and Fourteenth Amendments to the United States Constitution. Count III alleges unequal protection of the laws in violation of articles 1, 10, and 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution. Count IV alleges double jeopardy in violation of articles 1, 10, and 12 of the Massachusetts Declaration of Rights and Article, Section Ten of the United States Constitution and the Fourteenth Amendment to the United States Constitution. Count VI alleges a violation of the fundamental requirements of the Act itself.

On several occasions, the SJC has recognized the possibility that Massachusetts law affords more substantive protections under art. 14 of the Massachusetts Declaration of Rights than provided for under the Fourth Amendment to the United States Constitution. Commonwealth v. Upton, 394 Mass. 363, 373 (1985); see also Commonwealth v. Sheppard, 387 Mass. 488, 508 n. 22 (1982), rev’d, 104 S.Ct. 3424 (1984).