Connolly, J.
This matter comes before the Court on the Commonwealth’s Motion for a Blood Sample of Henry Altenor (“Altenor”). Altenor is a non-party to this criminal matter. After hearing, consideration of the parties’ submissions, and for the reasons set forth below, this Court DENIES the Commonwealth’s motion.
BACKGROUND
This matter initially arose from the alleged thefts of substantial monies from Doctor John Weil and his wife, Mrs. Weil, who were both residents of Fox Hill Village, a retirement community in Westwood, MA. Dr. Weil suffered from Parkinson’s disease. His wife was also very ill at the time and unable to care for herself. The defendant, Martine Pressat (“defendant”), was a home health care worker for Dr. Weil’s wife.
Doctor Weil became aware of the thefts on or about December 4, 1997. On December 8, 1997, Dr. Weil was found dead around 8:11 a.m. The medical examiner’s autopsy report indicates that Dr. Weil was found on the floor next to his bed, prone and fully dressed. The report also indicates that Dr. Weil died as a result of severe blunt neck trauma. He also received blunt facial and head trauma, and blunt trauma to his back and upper extremities. There was no evidence of any injury to either the defendant or Altenor. Additionally, the forensic examination revealed human blood under Dr. Weil’s fingernails while DNA tests revealed DNA from two people, one of whom is the victim. The unknown DNA sample also reveals DNA from a male, which could be attributed to the victim himself, or to the contributor of the second source of DNA, or to both. Occurrence of this particular DNA profile in the Afro-American population is approximately 1 in every 6,000 people.
For DNA testing, the Commonwealth obtained blood samples from the defendant, Eleanor Fleury, (“Fleury”) and Ann Howley, (“Howley”). Both Fleury and Howley were home health care workers for Mrs. Weil at Fox Hill Village. Both have been excluded as sources of the DNA. The defendant cannot be excluded as a secondary source of the DNA found under Dr. Weil’s fingernails.
Fleury had, on the evening of December 7, 1997 at about 10 p.m., relieved the defendant, who had been on-duty caring for Mrs. Weil at the Weil home. Fleury, in turn, was later relieved by Howley at about 7:00 a.m. on December 8, 1997. It was Howley who discovered Dr. Weil’s body in his bedroom at about 8:00 a.m. Fleury had also observed the defendant leave that morning in a vehicle waiting in front of the building, which vehicle she had previously seen pick up the defendant on previous occasions at the end of the defendant’s shift. During the course of her employment, the defendant had indicated to her co-workers that her boyfriend, Henry Altenor, drove her home from work.
At this point, the case is now on the eve of the defendant’s trial for Dr. Weil’s murder. The matter against Altenor was submitted to the grand jury, with the grand jurors returning indictments of larceny, and not murder, against Altenor. Altenor pled guilty to his larceny indictments, served his sentence of incarceration, and is now released from custody. Notwithstanding these circumstances, the Commonwealth now seeks a blood sample from Altenor.
DISCUSSION
The Commonwealth requests that this Court order Altenor to provide a blood sample. The Commonwealth contends that the sample will strongly point to the person responsible for Dr. Weil’s death and will determine whether or not Altenor can be excluded as the contributor of the second source of DNA under Dr. Weil’s fingernails. Additionally, the Commonwealth argues that a sample of Altenor’s blood will probably produce evidence relevant to the question of his guilt.
On the state of this record, this Court believes that it may not and should not allow the Commonwealth’s motion. This case is no longer before á grand jury. The grand jury already considered this case and returned only larceny indictments against Altenor. No murder indictment was ever returned against him. Hence, this Court can reasonably infer that the grand jury was unable to find probable cause that Altenor committed Dr. Weil’s murder. If the grand jury, or the Commonwealth had wished, it could have moved for a Court order, prior to the return of indictments in this case, for a sample of Altenor’s blood,[1] but they chose not to do so.
Now we are no longer at the grand jury stage and we have a person who is not charged, and not indicted (and whom the grand jury apparently found no prob *170 able cause to indict). As Chief Justice Liacos stated in his dissent in In Matter of Lavigne, 418 Mass. 831, 837 (1994), “I cannot agree that our common law permits a warrant to issue authorizing the forcible taking of blood from an unarrested, uncharged, and unindicted citizen of the Commonwealth,” or as Justice O’Connor stated in his separate dissent, “I would require that the Commonwealth establish probable cause to believe that the extracted blood would inculpate [the individual from whom the blood sample is sought] in [the] murder . . . However, if the Commonwealth can
only establish probable cause to believe that [the individual's] blood will either inculpate him, exculpate him or neither, the Commonwealth will have failed to show that there is probable cause to believe that the extraction and testing of [that individual’s] blood will produce evidence to prove anyone’s guilt of a crime.” See id. at 840. Under our case law and Constitutions, seeking a blood sample from Altenor at this time is overreaching beyond the permissible bounds of the law.
Accordingly, this Court DENIES the Commonwealth s motion. ORDER
Pursuant to the above, the Court DENIES the Commonwealth’s Motion for a Blood Sample of Henry Altenor.

 A grand jury may request a blood sample, provided that they “have a reasonable basis for believing . . . that a blood sample will provide test results that will significantly aid . . . the grand jury in their investigation of circumstances in which there is reason to believe that a crime has been committed.” In re Grand Jury, 427 Mass. 221, 226 (1998).