ENGLANDER, J.
*504 *285 In this case we consider the sufficiency of an application for a warrant to search the defendant's properties and business records for evidence of criminal activity. In 2009 State and local police executed search warrants at the defendant's home and at his place of business, both in Lynn. The defendant has a lengthy criminal history for burglaries, and the police were searching in particular for evidence related to a June 2008 burglary of a jewelry manufacturer in Attleboro, during which millions of dollars *505 in jewelry and precious metals were stolen. The police ultimately seized a variety of items, including stolen jewelry and records believed to be evidence of the defendant's criminal activity. In October 2017 a judge of the Superior Court suppressed the seized items, reasoning that the warrant affidavit was insufficient to establish probable cause to search either property.[1] The Commonwealth appeals, and we now reverse the suppression of the evidence seized from the defendant's home and business.[2]
Background. The facts are taken from the warrant affidavit at issue, submitted by a State police lieutenant on January 22, 2009. Our review is limited to the four corners of the affidavit, including its attached exhibits. See Commonwealth v. O'Day, 440 Mass. 296, 298, 798 N.E.2d 275 (2003).
On June 8, 2008, burglars broke into E.A. Dion, Inc. (E.A. Dion), in Attleboro, overnight, and made away with $ 2.5 million in jewelry and precious metals. The burglars cut a hole in the roof, disabled the primary alarm system, and used a sophisticated "jammer" to prevent cellular communication by a back-up system. Somehow, the burglars managed to remove a safe weighing over 1,000 pounds from the building.
The police investigators eventually trained their attention on the defendant, and the warrant affidavit described the defendant's lengthy criminal history, including numerous burglaries, beginning in the 1980s and continuing into the 2000s. One notable item in the criminal history is the defendant's conviction of charges related to a 2004 burglary of a Costco warehouse in Pennsylvania. During that 2004 burglary the burglars gained entrance through the roof and used a sophisticated jammer to defeat the back-up cellular alarm system. The jammer was left at the scene. The burglars took jewelry and prescription *286 medications, but the burglars (including the defendant) were stopped and arrested later that evening while driving away. The burglars wore black clothing and carried many burglary tools, including wire cutters, wrenches, and pry tools.
In the fall of 2006 the defendant sent a letter to the president of Costco, offering to provide "security consulting" services to the company. The defendant stated that he was a member of an "elite team of experts" that had "successfully burglarized a number of *506 COSTCO Wholesale Warehouses." The defendant signed his name to the letter on behalf of "Angel One Security Consulting," and listed its address as 407 Walnut Street in Lynn. That address was the defendant's home address, and one of the two properties subject to the January 2009 search warrants at issue.
The lieutenant's affidavit covered nine pages, and incorporated hundreds of pages of attachments. The affidavit contains strong evidence that the defendant was engaged in a criminal enterprise that had been ongoing for several years, up until the time of the affidavit. For example, in November of 2006, some twenty months before the E.A. Dion burglary, burglars robbed AmerisourceBergen Corporation (AmerisourceBergen) in Mansfield and stole 1.8 million prescription pills. The telephone lines were cut, and the thieves entered through a hole in the roof. Several facts in the warrant affidavit implicated the defendant in the AmerisourceBergen burglary, including evidence that he was involved in distribution of the stolen pills. Thereafter, in October of 2007, nine months before the E.A. Dion burglary, Attleboro police found burglary equipment, including tools, ropes, black clothing, and a sophisticated cell phone jammer, in the woods next to an Attleboro business known as Jostens Jewelry Company (Jostens). The abandoned equipment appeared to have been the result of a failed burglary effort, and once again, a cell phone jammer was left behind.
Perhaps the most important information in the affidavit, however, came from a police investigator's summary of a January 15, 2009 interview of one Laura Cooper,[3] which occurred one week before the warrants at issue were obtained. Cooper lived with the defendant at 407 Walnut Street from January of 2008 until October of 2008. Cooper told the police that the defendant had explained to her, in detail, how he conducted his burglaries. The defendant operated a moving company, North Shore Movers, which had a warehouse at 725R Summer Street in Lynn. The defendant brought Cooper to the warehouse in approximately March of 2008 and showed her where he stored his burglary tools, including climbing ropes, black "ninja suits," and a cell phone jammer. The defendant explained that he used a "crew" of approximately five men, that they would disable the alarm systems and enter from the roof, and that he generally used two persons on the crew who worked at his moving company, one of whom was named "Jose." The defendant would research his targets in advance, in *507 part using a computer located in the warehouse. The defendant also explained that he bought the jammer from overseas, that it was "incredibly expensive," and that it was used to disable backup alarm systems. Cooper sketched the jammer for investigating officers, and sketches of both the jammer and the warehouse were attached to the interview summary.
Cooper also related that in the summer of 2008 the defendant told her that he was *287 going away "to do a burglary."[4] When the defendant returned to 407 Walnut Street a few days later he brought jewelry, gold bars, and approximately twelve Super Bowl rings, which he laid out on the bed. The jewelry was split in half. The defendant took one-half to give to his accomplices. Cooper and the defendant's girlfriend took the other one-half to the home of the girlfriend's grandmother. The defendant gave Cooper three items of jewelry, which he admonished her not to pawn as they could be easily linked to the burglary.
The police sought the search warrants at issue on January 22, 2009, and executed them the following morning.[5] The warrant for 725R Summer Street (warehouse) authorized the seizure of any burglary equipment that might be located there, as well as "employee person[n]el" and other "business records" related to the defendant's companies, North Shore Movers and Angel One Security. The warrant for 407 Walnut Street authorized only the seizure of business records,[6] and did not address burglary tools. During the initial searches the officers observed several additional, potentially incriminating items that they did not seize.[7] On *508 January 23, the lieutenant supplemented his affidavit and applied for additional warrants to seize the items the officers observed, which warrants were issued and executed.
The defendant was indicted on May 1, 2009, on two counts of possession of a burglarious instrument, four counts of receiving stolen property, and one count each of attempt to commit a crime, and breaking and entering in the night time with the intent to commit a felony. Between 2009 and 2017 the defendant filed dozens of pretrial motions, but as of 2017 the case had not gone to trial and the defendant remained in custody.[8] In June of 2017, the defendant filed two motions seeking to suppress the evidence seized during the January 23, 2009, searches. One motion argued that the affidavit did not establish probable cause to justify the searches; the second motion, which was cast as a motion to excise portions of the warrant affidavit, sought suppression because the affidavit allegedly contained facts that the police affiant knew to be inaccurate or unreliable (similar to a motion under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 [1978] ).
*288 The judge held a hearing on the motions, at which both parties appeared. The Commonwealth did not file a written opposition, but the Commonwealth did argue orally, contending that both motions should be denied. In October of 2017 the motion judge ordered all of the seized evidence suppressed, finding that the warrants for the defendant's home and business were not supported by probable cause. The judge reasoned that although the affidavit contained "abundant evidence" that the defendant had committed numerous crimes, "[t]he affidavit contains no facts at all" indicating that evidence of those crimes would be found in business records at the defendant's home or place of business. The judge also concluded that the affidavit failed to demonstrate that the defendant's burglary tools could reasonably be expected to be found in the warehouse.
Discussion. 1. The probable cause standard. The question is whether the warrant affidavit contained sufficient information to establish probable cause to search the defendant's home and place of business in January of 2009, as required by the Fourth Amendment to the United States Constitution and art. 14 of the *509 Massachusetts Declaration of Rights. "The information in the affidavit must be adequate to establish a timely nexus between the defendant and the location to be searched and to permit the determination that the particular items of criminal activity sought reasonably could be expected to be found there." Commonwealth v. Santiago, 66 Mass. App. Ct. 515, 521, 848 N.E.2d 1253 (2006), quoting Commonwealth v. Wade, 64 Mass. App. Ct. 648, 651, 835 N.E.2d 264 (2005). See Commonwealth v. Walker, 438 Mass. 246, 249, 780 N.E.2d 26 (2002). The probable cause standard does not require a showing that evidence more likely than not will be found; in other words, it is not equivalent to a preponderance of the evidence standard. Rather, "probable cause" means merely that quantum of evidence from which the magistrate can conclude, applying common experience and reasonable inferences, that items relevant to apprehension or conviction are reasonably likely to be found at the location. See Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (probable cause "does not demand any showing" that belief that contraband is at location is "more likely true than false"); Commonwealth v. Garcia, 34 Mass. App. Ct. 645, 650, 614 N.E.2d 1031 (1993) (same). See also Commonwealth v. Rodriguez, 49 Mass. App. Ct. 664, 668, 732 N.E.2d 906 (2000) (equating probable cause with "reasonable likelihood" that contraband would be found at location to be searched).
Our review of the probable cause determination is de novo, based upon the information in the four corners of the warrant affidavit and any attachments. Commonwealth v. Perkins, 478 Mass. 97, 102, 82 N.E.3d 1024 (2017). In conducting our review, our cases emphasize that we should be practical, and nontechnical: "In dealing with probable cause ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (citation omitted). Commonwealth v. Anthony, 451 Mass. 59, 68, 883 N.E.2d 918 (2008). See Commonwealth v. Kenneally, 10 Mass. App. Ct. 162, 174, 406 N.E.2d 714 (1980).
2. Sufficiency of the warrant affidavit.[9] Here there was sufficient information *289 in the warrant affidavit to justify the warrants to *510 search both locations. At the outset we observe, as did the motion judge, that there was abundant information showing that the defendant had been involved in criminal activity -- not just the 2008 E.A. Dion burglary, but also the 2006 AmerisourceBergen burglary and the 2007 aborted attempt at Jostens Jewelry Company. As to E.A. Dion, Cooper's interview provided powerful direct evidence of the defendant's participation. The defendant told Cooper that he was going to commit the burglary, and he returned to 407 Walnut Street with the fruits of the crime. And Cooper's credibility as an information source was corroborated by the myriad nonpublic details she supplied -- including her description of the stolen items, her description of the burglars' tools and modus operandi, and in particular her knowledge of the use and appearance of the cell phone jammer.
The issue, therefore, was not whether the defendant had engaged in criminal activity, but whether there was sufficient information to justify a search of the defendant's home and business in January of 2009. Here the warrant affidavit went far beyond showing a nexus between the defendant and the 2008 E.A. Dion burglary. Rather, the affidavit provided powerful evidence of an ongoing criminal enterprise. The 2004 Pennsylvania burglary, the 2006 AmerisourceBergen burglary, and the 2008 E.A. Dion burglary all evidenced very similar details, and there was strong evidence that the defendant and his "crew" were involved in each. The burglars used the same tools and modus operandi, and demonstrated similar knowledge of the targets. The defendant told Cooper how he performed his burglaries in March of 2008, well before the E.A. Dion burglary. The defendant had a cell phone jammer in his warehouse at that time even though the evidence indicated he had relinquished at least two such jammers previously, one of which had been left outside Jostens in the fall of 2007. Stated differently, the affidavit evidenced an enterprise that preceded the E.A. Dion burglary, and one that (it could be reasonably inferred) would continue after the E.A. Dion burglary. This enterprise carefully researched its targets, replenished its *511 burglary tools (including very expensive tools), and operated for extended periods out of the same locations at 407 Walnut Street and at the warehouse at 725R Summer Street.
a. The warehouse. There was thus more than enough information to justify the warrant for the warehouse. That warrant sought burglary tools, and employee personnel records and other business records. As to the burglary tools, such tools were observed in the warehouse in March of 2008. It is reasonably inferable that some or all of the tools were used at E.A. Dion in June of 2008. Given the ongoing nature of the criminal enterprise, this evidence *290 was sufficient to establish probable cause -- that is, information that would "warrant a [person] of reasonable caution in the belief" (citation omitted), Brown, 460 U.S. at 742, 103 S.Ct. 1535 -- that burglary tools would be present at the warehouse in January of 2009.
The defendant at one point suggests that Cooper's information that she viewed the burglary tools in the warehouse was stale. While the information in a warrant affidavit must be "timely" -- that is, sufficient to justify a conclusion that the evidence is reasonably likely to be at the location currently, Commonwealth v. Hart, 95 Mass. App. Ct. 165, 167, 121 N.E.3d 195 (2019) -- the information was not stale under the circumstances here. It is reasonable to infer that the defendant used the tools at E.A. Dion in June of 2008. Nothing in the affidavit suggested that the tools were moved out of the warehouse thereafter; to the contrary, the affidavit described an operation that was ongoing, and there was no indication of a material change in the defendant's activities in the months between the E.A. Dion burglary and the time of the warrant affidavit. See Commonwealth v. Pratt, 407 Mass. 647, 662 n.14, 555 N.E.2d 559 (1990) (information from six months earlier justified search warrant where affidavit showed "ongoing criminal operation" [citation omitted] ). Cooper lived with the defendant into October of 2008, and her interview occurred days before the warrants issued. Moreover, the warrant affidavit showed that the police had the defendant under at least part-time surveillance right up until the execution of the warrants. This surveillance showed nothing new or unusual; the defendant still resided at 407 Walnut Street, and he still frequented the warehouse.
The motion judge found probable cause lacking for the "burglarious equipment" search, not because he found the information to be stale, but because he concluded that the defendant's burglary equipment had already been found and confiscated by the police, outside Jostens. This was error, for two reasons. First, the *512 judge incorrectly understood the warrant affidavit as stating that the tools found near Jostens had been found in October 2008, after the E.A. Dion burglary, when in fact those tools had been found before the E.A. Dion burglary, in October of 2007.[10] The tools used at E.A. Dion thus were not already with the police. Second and equally important, the affidavit showed an ongoing enterprise with a history of replenishing tools, so nothing in the affidavit supported the judge's implicit conclusion that the tools found at Jostens were the only tools the defendant possessed.
We reach a similar conclusion as to the portion of the warehouse warrant seeking business records. The motion judge concluded that there were "no facts" suggesting that warehouse business records would contain "incriminating evidence," but we disagree. Cooper specifically stated that the defendant researched his burglary targets on a computer located at the warehouse. Such activity gives rise to a reasonable belief that records of this research would be in that computer or in hard copy.[11] Moreover, there was evidence *291 one of the other criminal perpetrators was an employee of the moving company named Jose, and the business likely would have records concerning its employees.
But beyond these specific examples, we believe the motion judge adopted too narrow a view of what facts would justify a search of and for "business records." The defendant seems to suggest that there must be direct evidence that records of criminal activity existed at the warehouse, but that is incorrect where the existence of such records can be inferred. Thus, in Santiago, 66 Mass. App. Ct. at 522, 848 N.E.2d 1253, we concluded that observation of the defendant's use of his residence for apparent drug dealing gave rise to probable cause to search the residence for records. In Santiago, as here, there was no direct evidence that records existed at the defendant's residence and place of business. We nevertheless stated: "Once it was established that the defendant was operating a drug business that included 63 Monroe Drive, little, if anything more, needed to be added in the affidavit to justify searching for 'records, ledgers or proceeds' " (footnote omitted). Id.
*513 Here the evidence indicated that the defendant used the warehouse in his criminal activity, in a variety of ways. Employing the practical, commonsense approach of the case law, it is a reasonable inference that some of the defendant's uses - - the purchase of tools and the renting of vehicles, the research and mapping of targets, and the employment of accomplices -- would generate records that would be relevant and useful in the apprehension and conviction of the defendant or his accomplices. And it was further reasonable to believe that such records would be located at the warehouse.
The motion judge seemed to suggest that a search warrant for business records is a search for "mere evidence" -- as opposed to a search for contraband, or the fruits or instrumentalities of a crime -- and that a search for "mere evidence" requires a different and perhaps heightened showing in the warrant affidavit. Nothing in our cases makes such a distinction. See Santiago, 66 Mass. App. Ct. at 522, 848 N.E.2d 1253. See also Matter of Lavigne, 418 Mass. 831, 831-836, 641 N.E.2d 1328 (1994). The United States Supreme Court has long rejected the argument that search warrants cannot be used to search for "mere evidence" in a criminal investigation. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 306-307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). See Zurcher v. Stanford Daily, 436 U.S. 547, 559-560, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). The standard for whether a search warrant is proper is whether "the evidence sought will aid in a particular apprehension or conviction" (citation omitted). Commonwealth v. Perkins, 478 Mass. 97, 108, 82 N.E.3d 1024 (2017). Lavigne, supra at 835-836, 641 N.E.2d 1328. The business records sought here met this test -- whether they were records of purchases of burglary tools, or employee records that might aid in identifying the defendant's accomplices.
b. 407 Walnut Street. There was also probable cause to search the defendant's home. Once again, the warrant affidavit established an adequate connection between 407 Walnut Street and the defendant's criminal activity. See Santiago, 66 Mass. App. Ct. at 521, 848 N.E.2d 1253. The defendant's 2006 letter to Costco gave 407 Walnut Street as the address for his security business. That is also where the defendant brought the fruits of the E.A. Dion burglary in June of 2008. The defendant operated his moving company from his home before he began using the warehouse, and the address for North Shore Movers continued to be 407 Walnut Street right up until the execution of the warrants.
*292 This information, in total, was sufficient to warrant a reasonable belief that evidence of the defendant's criminal activity would be found in documents and *514 records at 407 Walnut Street.[12]
Conclusion. We reverse the portion of the order allowing the suppression of the evidence seized from the defendant's home and place of business.
So ordered.

There were separate warrant applications for the defendant's home, business, and vehicle. The same affidavit supported each of the applications.

A single justice of the Supreme Judicial Court allowed the Commonwealth's motion for leave to pursue an interlocutory appeal. See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017).

A pseudonym.

Cooper said that this occurred in "approximately July," and she also said that the burglary was in Pennsylvania. The remainder of Cooper's description, however, corresponds markedly to the June 2008 robbery of E.A. Dion in Attleboro, including her description of the stolen items that the defendant brought home.

A search warrant also issued for the defendant's vehicle; however, on appeal the Commonwealth concedes that the evidence seized from the vehicle was properly suppressed.

The search warrants described the business records sought as "employee person[n]el records and business records of North Shore Movers and Angel One Security ... [including] but not limited to financial records, contracts, advertisements, payroll, and tax documents."

The record is unclear as to what items were seized during the initial searches. The record reflects that the officers observed the following: at 407 Walnut Street, suspected burglary tools in the basement, false identifications bearing the defendant's photograph, letters from an associate implicating the defendant in the break-ins, documents indicating the defendant was sending jewelry to a Pennsylvania wholesaler, a large amount of cash, a Super Bowl ring die cast, and two safe deposit keys; at 725R Summer Street, a ring from the E.A. Dion burglary, as well as paperwork linking the defendant to the author of the letters identified at 407 Walnut Street and implicating the defendant in criminal activity.

The parties do not explain why it has taken this long to get to trial.

The defendant contends that the Commonwealth waived its appellate arguments as to the sufficiency of the warrant affidavit, because it did not make those arguments to the motion judge. We disagree, because we believe the arguments were sufficiently preserved. While the Commonwealth did not file a written opposition to the motion to suppress, it did appear at the hearing and argue orally against the motion. And while the Commonwealth's oral presentation was confused by the fact that there were two motions before the judge, the Commonwealth did present arguments in support of the warrants that it also argues on appeal; for example, it argued that the warehouse search was justified because the warrant affidavit showed that the defendant used his business location to prepare for the burglaries, and to purchase the burglary tools. The Commonwealth also directly addressed the suggestion that the information in the warrant affidavit was stale. Accordingly, this is not a case where the Commonwealth is presenting entirely new and different arguments on appeal. See Commonwealth v. Bettencourt, 447 Mass. 631, 633-634, 856 N.E.2d 174 (2006).

The body of the warrant affidavit correctly stated that the items were found near Jostens in October of 2007. An attachment -- a police report regarding the E.A. Dion burglary dated June 17, 2008 -- incorrectly stated in one place that the items were found near Jostens in October of 2008.

When the defendant and his crew were apprehended during the 2004 Costco burglary, they had with them a map of the area that was downloaded from the website Mapquest.com and printed from a computer.

For the same reasons stated above, the supplemental affidavit dated January 23, 2009, supporting the second set of warrants, was also sufficient.