NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-633

COMMONWEALTH

vs.

STERLING MELO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted by a jury of two offenses involving the distribution of fentanyl, stemming from a series of controlled purchases between the defendant and an undercover officer. On appeal the defendant argues that a judge erred in denying his motion for disclosure of the identity and background of a confidential informant, where the confidential informant participated (with the undercover officer) in prior controlled purchases that did not result in criminal charges. The defendant also argues that evidence obtained from a pole camera surveilling his residence should have been suppressed, alleging a lack of the requisite probable cause for such surveillance. We affirm.

Background.  There are two motions at issue in this appeal.

In July of 2020, the defendant moved for disclosure regarding

the confidential informant involved in the investigation of his

case, arguing that the Commonwealth could not assert the

informant privilege under the circumstances.  In December of

2021, the defendant moved to suppress evidence obtained by pole

camera surveillance, arguing that the Supreme Judicial Court's

then-recent decision in Commonwealth v. Mora, 485 Mass. 360

(2020), required suppression.  The following facts are drawn

from the documentary evidence before both motion judges.[1]

In November of 2018, a confidential informant (CI)

described as a "Lynn Police Drug Task Force informant" reported

that the defendant was supplying heroin and fentanyl to

customers in the Lynn area.  The CI stated that it had purchased

drugs from the defendant previously, and named the defendant's

street of residence.  Officers conducted a registry of motor

vehicles (RMV) search that revealed a Lynn address for the

defendant, on the street that the CI had named; officers also

searched a law enforcement research database and found that the

---

[1] The two motions were argued separately, and the evidence before each motion judge differed slightly.  In evaluating the orders denying the motions, we considered in each instance only the record before each judge.  See Commonwealth v. Johnson, 481 Mass. 710, 726 n.14 (2019).

2

defendant was registered to vote at that same address, and had utilities and phone numbers listed at that address.

That same month, the CI arranged a controlled purchase of narcotics from the defendant, which occurred at the defendant's residence. A law enforcement surveillance team followed the CI to the defendant's residence, but lost sight of the CI before the CI entered the building. The CI later reported that the transaction began inside the defendant's apartment building, continued in the defendant's car, and concluded outside the apartment building. Within the same week, the CI made a second controlled purchase of narcotics, accompanied by an undercover officer with the State Police who drove the CI to the defendant's residence. The undercover officer watched as the defendant opened a side door, after which the defendant and the CI entered the building. The CI then purchased narcotics inside the building.

On November 30, 2018, investigators installed a pole camera in the area of the defendant's residence, to surveil the defendant. The police did not seek a warrant before installing the camera; the installation occurred prior to the decision in Mora, which established that such surveillance constituted a search under art. 14 of the Massachusetts Declaration of Rights. See Mora, 485 Mass. at 376. In response to the defendant's

post-Mora motion to suppress, the Commonwealth submitted an affidavit from State Trooper Carly Rose, who was involved with the investigation of the defendant (but was not the undercover officer). Trooper Rose attested that based on the CI's information, the confirmation of the defendant's address through the RMV and law enforcement database searches, and the two controlled purchases, she "believed that [the defendant] resided at [the residence] and was also using that location to store narcotics and the illicit proceeds of his narcotics operation."[2]

In December of 2018,[3] the CI arranged a third controlled buy, and the undercover officer drove the CI to the defendant's residence. Once again, the transaction between the CI and the defendant occurred inside the defendant's apartment building. On this occasion when the CI and the defendant left the building, the defendant saw the undercover officer in the car, and the two of them acknowledged each other. RA 124.

Thereafter, in December of 2018 and January of 2019, the undercover officer conducted three additional controlled transactions directly with the defendant, without the CI. These

---

[2] Trooper Rose made this attestation by affidavit in September of 2021, for the purpose of justifying the pole camera installation.

[3] At trial, the undercover officer testified that this third controlled buy occurred in November of 2018. This discrepancy has no effect on our analysis below.

4

controlled buys all occurred outside, but in the vicinity of, the defendant's residence. In January of 2019 the defendant began to show suspicion of the undercover officer, and the police halted the controlled buys.

In June of 2019, the defendant reinitiated contact with the undercover officer. The defendant told the undercover officer that he had "some good stuff" and offered a sample. In July and August of 2019, the undercover officer and the defendant engaged in three further controlled purchases. These purchases also took place in the vicinity of the defendant's residence.

On August 14, 2019, Trooper Rose submitted an affidavit seeking a warrant to search the defendant's residence, person, and phone. In that affidavit, Trooper Rose indicated that she had spoken with the CI two days prior, and that the CI identified the defendant's apartment; the CI stated that it had been to the defendant's apartment "on many occasions when transactions occurred." The CI also stated that the defendant often hid narcotics in the curtains and curtain rods of his apartment. Trooper Rose stated in her affidavit that "CI's true identity will be kept confidential to ensure the safety of CI and CI's family."

On August 15, 2019, officers took the defendant into custody and searched his residence. The police did not find any

5

narcotics, but found cell phones, money, and a "finger" press used for pressing narcotics. The defendant was indicted on three counts of possession of fentanyl with intent to distribute, G. L. c. 94C, § 32 (a), and three counts of trafficking in ten grams or more of fentanyl, G. L. c. 94C, § 32E (c 1/2). Relevant here, the indictments were based only on the controlled buys conducted by the undercover officer when the CI was not present.

The defendant filed a motion for disclosure of information regarding the CI, including the CI's identity, address, and history with the police.[4] The defendant argued that the CI's credibility was an issue at trial, because the identification of the defendant by name resulted from the CI's report and subsequent database searches based on that report; the theory of the defense was misidentification. The defendant's motion was denied after a nonevidentiary hearing. The defendant thereafter moved separately to suppress all evidence collected from the pole camera, arguing that there was no probable cause for the surveillance as required by Mora, 485 Mass. at 376-377. After a nonevidentiary hearing, the motion judge denied the motion to suppress as to the pole camera evidence collected during the

---

[4] The Commonwealth had previously moved for a protective order.

time periods when the controlled buys occurred -- from November 30, 2018 to January 9, 2019, and from July 25, 2019 to August 15, 2019.[5]

After a trial, a jury convicted the defendant on one of the possession charges and one of the trafficking charges; this appeal followed.

Discussion. 1. Disclosure of confidential informant. In response to the defendant's motion for disclosure of the CI information, the Commonwealth successfully invoked the "informant privilege." When asserted properly, the informant privilege excuses the Commonwealth from providing discovery regarding a confidential informant's identity, including "details that would in effect identify the informant." Commonwealth v. Whitfield, 492 Mass. 61, 68 (2023), quoting Commonwealth v. John, 36 Mass. App. Ct. 702, 707 (1994). See Commonwealth v. Bonnett, 472 Mass. 827, 846 (2015), S.C., 482 Mass. 838 (2019). Here the Commonwealth argued that the informant privilege should be applied to protect the safety of the CI. "We review a decision on a motion for disclosure of information subject to the Commonwealth's assertion of the informant[] privilege for an abuse of discretion." Whitfield,

_____

[5] The judge who heard the motion to suppress was not the judge who heard the motion for CI disclosure.

7

supra at 67. "Where, as here, the motion judge conducted a nonevidentiary hearing, and the record before the judge consisted only of documentary evidence . . . we are in the same position as the motion judge to assess the documentary evidence" (quotations and citation omitted). Id.

Our case law sets out a two-stage analysis for evaluating the government's assertion of the informant privilege. "The first stage involves preliminary determinations as to (a) whether the Commonwealth has properly asserted an informant privilege, and (b) whether the defendant has adequately challenged the assertion of the privilege as an impermissible interference with his or her right to present a defense." Bonnett, 472 Mass. at 846. The Commonwealth properly asserts the privilege, and satisfies its first-stage burden, "where disclosure would endanger the informant or otherwise impede law enforcement efforts." Id. at 847. The defendant satisfies his first stage burden by presenting "some offering so that the trial judge may assess the materiality and relevancy of the disclosure to the defense, if that relevancy is not apparent from the nature of the case and the defense offered thereto." Id., quoting Commonwealth v. Kelsey, 464 Mass. 315, 323 (2013). The defendant's burden at this first stage is "relatively undemanding." Bonnett, supra. Only if the privilege has been

8

asserted properly by the Commonwealth, and challenged adequately by the defendant, do we move to the second stage, which involves "a balancing test . . . in which the interest of the public in protecting the anonymity of informants is weighed against the defendant's right to defend himself."  Id. at 846-847.

As to the Commonwealth's first-stage burden, the Commonwealth argues that it put forth sufficient evidence, in the form of Trooper Rose's affidavit, that disclosure of the CI's identity would put the CI and the CI's family at risk.  The defendant argues that the Commonwealth failed to substantiate the safety concerns underlying Trooper Rose's sworn statement.  However, the risk to the CI is apparent from the affidavit.  The CI was a customer of the defendant, and had been to the defendant's apartment "on many occasions" to purchase drugs.  The CI informed the police of the defendant's drug sales, and the CI made three controlled purchases from the defendant.  Furthermore, the CI had a track record as an informant to the Lynn police; one could make the reasonable inference, as the motion judge did in this case, that "the CI is from the Lynn area and that Lynn police officers have worked with the CI in the past."  These facts established safety concerns sufficient for the Commonwealth to invoke the informant privilege.  See Commonwealth v. Gandia, 492 Mass. 1004, 1004-1005, 1007 (2023)

(rejecting defendant's argument that Commonwealth failed to show "specific" and "tangible" risks to informant, where informant had observed, but had not participated in, defendant's drug transactions, and where informant had previously provided multiple tips resulting in seizure of contraband, including firearms).

Moving to the defendant's first-stage burden, the defendant argues that disclosure of the CI's identity was material and relevant to his defense, because it would have enabled him to call the CI as a witness and challenge the CI's credibility. The defendant emphasized to the motion judge and on appeal that the CI provided the initial identification of the defendant in November 2018, played an important role in the investigation by arranging controlled purchases, and provided allegations of drug possession in August 2019 that the police relied on in obtaining a search warrant. The defendant has not shown, however, how attacking the credibility of the CI would have been material to his defense, where the CI was not a participant or even a witness to any of the charged crimes. As noted above, the charged offenses all arose out of buys by the undercover officer, when the CI was not present. Because the undercover officer observed the defendant firsthand, and participated in the charged drug transactions with him, whereas the CI did not,

the charges did not turn on the credibility of the informant who initially led the officer to the defendant.[6]  See Commonwealth v. Barry, 481 Mass. 388, 411 (2019) (defendant did not meet first-stage burden where informant, who heard and reported rumor that defendant was not culpable, was not percipient witness, but reported "word on the street").  See also Commonwealth v. Connolly, 454 Mass. 808, 827-828 (2009) (affirming nondisclosure of informant where informant introduced undercover officer to defendant, but informant was not percipient witness to charged crimes); Commonwealth v. Clarke, 44 Mass. App. Ct. 502, 511 (1998) (no prejudice to defendant from lack of disclosure where defendant was not charged with only alleged crime in which informant participated).  As the defendant did not meet his first-stage burden, there was no abuse of discretion in denying his motion for disclosure of the confidential informant.[7]

---

[6] The defendant emphasizes that the CI informed Trooper Rose that the defendant "often will secrete narcotics in the curtains and curtain rods of the residence," but that no such narcotics were found.  However, the defendant sought disclosure of the CI's identity to call the CI as a witness at trial, not to challenge the search warrant.  As stated above, the CI was not a witness to the crimes charged.

[7] Even if we were to assume that the defendant satisfied his first-stage burden, the defendant would not have prevailed at the second stage, as he did not show that the informant's identity was sufficiently "relevant and helpful" to his defense to justify disclosure.  See Bonnett, 472 Mass. at 847-848, quoting Commonwealth v. Dias, 451 Mass. 463, 468 (2008).

2.  Motion to suppress.  The defendant also argues that the warrantless surveillance of his residence by pole camera was an unconstitutional search, and that the evidence obtained therefrom should have been suppressed.  In Mora, 485 Mass. at 375-376, the Supreme Judicial Court held that "targeted, long-duration pole camera surveillance of [defendants'] homes" was a search under art. 14 of the Massachusetts Declaration of Rights, and that a warrant was required for such surveillance.  The surveillance at issue occurred prior to the Mora decision, however, and the Supreme Judicial Court has held that where such pre-Mora pole camera evidence is at issue, the evidence should not be suppressed as long as the Commonwealth can show that it had probable cause that "a particular offense had been, was being, or was about to be committed, and that the pole camera surveillance undertaken would produce evidence of the offense or that it would aid in the apprehension of the suspect." Commonwealth v. Comenzo, 489 Mass. 155, 160 (2022).  See Mora, supra at 376-377.

In light of Mora, the parties agree that the pole camera surveillance in this case constituted a search, and must be justified by probable cause.  The defendant contends that as of November 30, 2018, the date that the pole camera was installed,

12

probable cause was lacking; he argues in particular that the information provided by the CI lacked indicia of reliability.[8]

We agree with the motion judge that the Commonwealth's affidavits demonstrated probable cause to begin surveillance on November 30, 2018, and again on July 25, 2019.[9] The standard for probable cause is less than a preponderance of the evidence; in this context, it means a reasonable likelihood that a crime was being committed at the defendant's residence, and that pole camera surveillance would produce evidence of that crime. See Commonwealth v. Murphy, 95 Mass. App. Ct. 504, 509 (2019). As of November 30, 2018, the officers plainly had probable cause to believe that narcotics were being illegally distributed at the defendant's residence. By that date the defendant had twice sold narcotics to the CI at his residence; during the first controlled buy, the CI was under law enforcement surveillance

---

[8] The defendant also argues that a showing of probable cause as of November 30, 2018, did not justify surveillance for over eight months thereafter. We need not reach this issue, however, because much of the evidence from this time was suppressed; in effect, we are reviewing two periods of surveillance, each several weeks long, rather than a continuous eight-month period of surveillance.

[9] The Commonwealth submitted both the search warrant affidavit and a supplemental affidavit prepared in response to the motion to suppress, each authored by Trooper Rose. See Mora, 485 Mass. at 377 (Commonwealth may submit warrant affidavits, or other evidence including supplemental affidavits, to establish probable cause).

13

for part of the transaction, and during the second controlled buy, a State trooper had witnessed material events immediately outside the defendant's residence.  At least the second controlled purchase included the essential components for such a purchase to establish the veracity of the CI, as set out in Commonwealth v. Desper, 419 Mass. 163, 168 (1994).  By July 25, 2019, the defendant had participated in four further controlled purchases of narcotics, all at or around his residence, and for three of which the undercover officer was the purchaser; furthermore, the defendant had reinitiated contact with the undercover officer only a month prior, seeking to sell more narcotics.

Furthermore, the officers had probable cause that the pole camera surveillance would produce evidence of illegal drug distribution.  The pole camera did not look inside the defendant's residence, but it was directed at the defendant's residence and the area outside the defendant's residence.  Prior to the installation of the pole camera, two controlled purchases had occurred in and around the defendant's residence.  The officers had probable cause that pole camera surveillance would lead to the observation of additional drug transactions (or components thereof) occurring in the area around the apartment.

14

Accordingly, the pole camera surveillance was permissible under

<u>Mora</u>.

<u>Judgments affirmed</u>.

By the Court (Massing,
  Englander &
  D'Angelo, JJ.[10]),

Clerk

Entered:  July 17, 2025.

---

[10] The panelists are listed in order of seniority.